# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| CALL OF THE WILD MOVIE, LLC,　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　Plaintiff,　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| v.　　　　　　　　　　　　　　　　　) | No. 1:10-cv-00455-RMU |
| 　　　　　　　　　　　　　　　　　　) | |
| DOES 1 – 358,　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　Defendants.　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD PARTY
TIME WARNER CABLE INC'S MOTION TO QUASH OR MODIFY SUBPOENA**

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

    A.    Background Of This Litigation ........................................................................1

    B.    TWC's Subpoena Compliance Capabilities....................................................3

    C.    Prior Negotiations With Dunlap ....................................................................4

LEGAL STANDARD.......................................................................................................6

ARGUMENT ...................................................................................................................7

I.     THIS COURT SHOULD QUASH THE SUBPOENA BECAUSE IT VIOLATES
      AN EXPRESS AGREEMENT AND BECAUSE COMPLIANCE WOULD BE
      HIGHLY BURDENSOME..........................................................................................7

    A.    The Court Should Quash the Subpoena Because It Violates An Agreement
         Reached Between TWC and Plaintiff's Counsel ........................................8

    B.    The Court Should Quash The Subpoena Because Compliance Would
         Impose Excessive and Unreasonable Burdens on TWC..........................9

II.    AT A MINIMUM, THIS COURT SHOULD IMPLEMENT STRICT
      LIMITATIONS ON THE SCOPE OF THE SUBPOENA.............................................11

    A.    The Court Should Grant An Extension Of Time Such That TWC Must
         Provide Information For Only 28 IP Address Lookups Per Month....................11

    B.    The Court Should Require Plaintiff To Pay TWC's Costs In Advance ...............11

    C.    The Court Should Limit Discovery To IP Addresses Identified In The
         Complaint................................................................................................13

III.   RULE 7(M) STATEMENT ........................................................................................14

CONCLUSION...............................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Achte/Neunte Boll etc. v. Does 1 - 2,094,*
No. 10-453 (D.D.C. filed Mar. 18, 2010) ............................................................................... 1, 2

*Angell v. Shawmut Bank Connecticut Nat'l Ass'n,*
153 F.R.D. 585 (M.D.N.C. 1994) ..................................................................................................... 8

*Arista Records LLC v. Does 1-19,*
551 F. Supp. 2d 1 (D.D.C. 2008) ..................................................................................................... 2

*Arista Records LLC v. Does 1-4,*
589 F. Supp. 2d 151 (D. Conn. 2008) ............................................................................................. 3

*Arista Records, L.L.C. v. Does 1-11,*
No. 1:07-cv-2828, 2008 WL 4449444 (N.D. Ohio Sept. 30, 2008) ........................................... 3

*Arista Records, LLC v. Does 1-12,*
No. 1:08-cv-1242, 2008 U.S. Dist. LEXIS 82548 (E.D. Cal. Sept. 4, 2008) ............................. 3

*BMG Music v. Does 1-4,*
No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006) ............... 10

*Call of the Wild Movie, LLC. v. Does 1 – 358,*
No. 1:10-cv-00455-RMU (D.D.C. filed Mar. 19, 2010) ......................................................... 1, 2

*Celanese Corp. v. E.I. du Pont de Nemours & Co.,*
58 F.R.D. 606 (D.Del. 1973) .......................................................................................................... 12

*Cusumano v. Microsoft Corp.,*
162 F.3d 708 (1st Cir. 1998) ............................................................................................................ 7

*Fonovisa, Inc. v. Does 1-9,*
No. 07-1515, 2008 WL 919701 (W.D. Pa. Apr. 3, 2008) ............................................................. 3

*G2 Productions, LLC v. Does 1 – 83,*
No. 10-41 (D.D.C., filed Jan. 8, 2010) ...................................................................................... 2, 13

*In re Auto. Refinishing Paint Antitrust Litig.,*
229 F.R.D. 482 (E.D. Pa. 2005) ...................................................................................................... 7

*In re Exxon Valdez,*
142 F.R.D. 380 (D.D.C. 1992) ...................................................................................................... 12

*In re Micron Technology, Inc. Sec. Litig.,*
264 F.R.D. 7 (D.D.C. 2010) ............................................................................................................ 6

*Interscope Records v. Does 1 - 7,*
  494 F. Supp. 2d 388 (E.D. Va. 2007) ........................................................... 3

*Interscope Records v. Does 1-14,*
  558 F. Supp. 2d 1176 (D. Kan. 2008) ........................................................ 3

*Laface Records, LLC v. Does 1 – 38,*
  No. 5:07-CV-298, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008) ................. 10

*Linder v. Calero-Portcarrero,*
  180 F.R.D. 168 (D.D.C. 1998) .............................................................. 7, 11

*Maverick Entertainment Group, Inc. v. Does 1 – 1,000,*
  No. 10-569 (D.D.C. Filed April 8, 2010) .................................................. 2

*Northrop Corp. v. McDonnell Douglas Corp.,*
  751 F.2d 395 (D.C. Cir. 1984) ................................................................. 6

*Sony Music Entm't Inc., v. Does 1-40,*
  326 F. Supp. 2d 556 (S.D.N.Y. 2004) ...................................................... 3

*Spears v. City of Indianapolis,*
  74 F.3d 153 (7th Cir. 1996) .................................................................. 12

*UMG Recordings, Inc. v. Doe,*
  No. 08-3999, 2008 WL 4104207 (N.D. Cal. Sept. 4, 2008) ....................... 3

*Watts v. SEC,*
  482 F.3d 501 (D.C. Cir. 2007) ................................................................. 6

*West Bay One, Inc. v. Does 1 - 2000,*
  No. 1:10-cv-481 (D.D.C. filed Mar. 23, 2010) ..................................... 1, 2

*Worldwide Film Entertainment, LLC v. Does 1 – 749,*
  No. 10-38 (D.D.C., filed Jan. 8, 2010) ..................................................... 2

## STATUTES

18 U.S.C. § 2702(c) ...................................................................................... 4

18 U.S.C. § 2703 .......................................................................................... 4

## RULES

Fed. R. Civ. P. 20(a)(2)(A) ......................................................................... 10

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................... 6

Fed. R. Civ. P. 29 ........................................................................................ 8

Fed. R. Civ. P. 45 .................................................................................................... 7

Fed. R. Civ. P. 45(c)(1) ......................................................................................... 6

Fed. R. Civ. P. 45(c)(3) ......................................................................................... 6

Third party Time Warner Cable Inc. ("TWC") submits this memorandum in support of its motion to quash or modify plaintiff's Rule 45 subpoena. The subpoena violates an express agreement reached with plaintiff's counsel. In addition, compliance with the subpoena would be excessively burdensome and expensive. TWC is filing similar motions in two other cases pending in this District – *West Bay One, Inc. v. Does 1 - 2000*, No. 1:10-cv-481 (D.D.C. filed Mar. 23, 2010) (Judge Bates) and *Achte/Neunte Boll etc. v. Does 1 – 2,094*, No. 1:10-cv-453 (D.D.C. filed Mar. 18, 2010) (Judge Collyer) – as they involve similar subpoenas filed by the same plaintiff's counsel that similarly breach this discovery agreement and are excessively burdensome and expensive.

## INTRODUCTION

### A. Background Of This Litigation

This purports to be a copyright infringement case in which the plaintiff alleges that each of over 358 anonymous defendants has infringed plaintiff's copyright in a motion picture by distributing the motion picture on the internet. *Call of the Wild Movie, LLC. v. Does 1 – 358*, No. 1:10-cv-00455-RMU (D.D.C. filed Mar. 19, 2010), Complaint [Dkt. 1] ¶¶ 3, 12. In the other two cases, the *West Bay One* plaintiff alleges copyright infringement by 2,000 anonymous defendants, and the *Achte/Neunte* plaintiff alleges copyright infringement by 2,094 anonymous defendants.

TWC is not a defendant in any of these cases, nor has any plaintiff alleged that TWC played any role in the alleged infringement of its copyrights. TWC is a third party that is, among other things, an Internet Service Provider ("ISP") that operates under the name "Road Runner." TWC is involved because the plaintiffs do not know the identity of the defendants whom it sued. Complaint ¶ 8.

1

On or about February 16, 2010, Tom Dunlap of the law firm Dunlap Grubb and Weaver ("Dunlap"), counsel for the plaintiff in each of these cases, contacted TWC and announced that his firm was representing a number of movie studios. Dunlap stated that he would be serving TWC with a number of subpoenas seeking identifying information about TWC subscribers whom Dunlap believed had infringed upon the studios' copyright through the use of peer-to-peer software.

Dunlap has now filed a series of nearly identical copyright litigations in this judicial district. The cases each are against unnamed defendants, and each alleges virtually identical facts. *See Worldwide Film Entertainment, LLC v. Does 1 – 749*, No. 10-38 (D.D.C., filed Jan. 8, 2010) (Judge Kennedy); *G2 Productions, LLC v. Does 1 – 83*, No. 10-41 (D.D.C., filed Jan. 8, 2010) (Judge Kollar-Kotelly); *Achte/Neunte Boll etc. v. Does 1 - 2,094*, No. 10-453 (D.D.C. filed Mar. 18, 2010) (Judge Collyer); *Call of the Wild Move, LLC v. Does 1 – 358*, No. 10-455 (D.D.C. filed Mar. 19, 2010) (Judge Urbina); *West Bay One, Inc. v. Does 1 – 2,000*, No. 10-481 (D.D.C. filed Mar. 23, 2010) (Judge Bates); *Maverick Entertainment Group, Inc. v. Does 1 – 1,000*, No. 10-569 (D.D.C. Filed April 8, 2010) (Judge Leon). The plaintiffs chose to join multiple unrelated defendants in each separate case, but they declined to inform this Court that the cases were related, even though they each allege the same conduct, on the same theory, seeking the same relief.

Each of Dunlap's cases is far out of line with other comparable copyright infringement cases. Copyright cases involving third-party discovery of internet service providers have typically related to a plaintiff's effort to identify anonymous defendants whose numbers rank in the single or low-double digits. *See, e.g., Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1 (D.D.C. 2008); *Arista Records, LLC v. Does 1-12*, No. 1:08-cv-1242, 2008 U.S. Dist. LEXIS

82548 (E.D. Cal. Sept. 4, 2008); *Interscope Records v. Does 1-14*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151 (D. Conn. 2008); *Fonovisa, Inc. v. Does 1-9*, No. 07-1515, 2008 WL 919701, *8-9, (W.D. Pa. Apr. 3, 2008); *Arista Records, L.L.C. v. Does 1-11*, No. 1:07-cv-2828, 2008 WL 4449444 (N.D. Ohio Sept. 30, 2008); *UMG Recordings, Inc. v. Doe*, No. 08-3999, 2008 WL 4104207 (N.D. Cal. Sept. 4, 2008); *Interscope Records v. Does 1 - 7*, 494 F. Supp. 2d 388 (E.D. Va. 2007); *Sony Music Entm't Inc., v. Does 1-40*, 326 F. Supp. 2d 556, 564-565 (S.D.N.Y. 2004).

By contrast, plaintiff in this case alone seeks identifying information about 358 anonymous defendants, and seeks identifying information about 224 Internet Protocol ("IP") addresses from TWC. *See* Exhibit 1. Collectively, Dunlap's clients seek identifying information about 6,284 anonymous defendants, and have served subpoenas on TWC relating to 1,468 IP addresses.

## B. **TWC's Subpoena Compliance Capabilities**

TWC provides video, telephone and high-speed data service to its customers. In order to handle legal process, TWC has created a team within its Law Department that focuses exclusively on responding to subpoenas, warrants, court orders, National Security Letters, and other requests for information. *See* Affidavit of Craig Goldberg, ¶ 3 (Exhibit 2). The team comprises four full-time employees. *Id.* When a party seeks identifying information about a TWC internet subscriber through judicial process, in most instances the party issuing the process provides TWC with an Internet Protocol ("IP") address, which is a type of Internet fingerprint, along with a date and time that the IP address was used. *Id.* ¶ 4. Through a multiple step process involving work at the corporate and the local level, TWC can identify the high-speed customer associated with that IP address at that time. *Id.* at ¶¶ 4-5.

3

Prior to Dunlap's contact with TWC, TWC received an average of 567 IP lookup requests per month. *Id.* ¶ 6. Virtually all of these requests come from law enforcement. Some are emergency requests under 18 U.S.C. § 2702(c), in which death or serious physical injury are at issue. Examples of these requests include suicide threats, child abduction cases and terrorist activity. Such cases take immediate priority. *Id.* Other cases include subpoenas, search warrants and orders under 18 U.S.C. § 2703 and involve equally significant issues, but on a broader timetable. *Id.* In order to accommodate law enforcement's requests upon a reasonable time period, TWC has needed to retain a temporary worker over the past 10 months to aid the full-time team. *Id.*

## C. **Prior Negotiations With Dunlap**

TWC was concerned after its initial conversations with Dunlap, because thousands of IP lookup requests would overwhelm its systems and would cause unacceptable delays to law enforcement. TWC began negotiating with Dunlap in an effort to address his civil discovery requests while not overburdening TWC's systems.

Initially, Dunlap served TWC with two subpoenas. The *G2* subpoena required TWC to look up 24 IP addresses. The *Worldwide* subpoena required TWC to look up 13 IP addresses. As part of complying with those two subpoenas, TWC contacted Dunlap to discuss a negotiated solution for underlined subpoenas. TWC wrote in an email that it had performed a cost study showing that it cost $45 for each IP address lookup. TWC also proposed a solution – namely that Dunlap agree to limit all subpoena requests to no more than 28 total requests per month for all the cases combined, in order not to burden TWC's team and not to burden its ability to respond to law enforcement. In exchange TWC would agree to limit Dunlap's costs to $32.50 per IP address. In an email response, Dunlap expressly *agreed* to TWC's proposals relating to

future subpoenas and agreed to grant automatic extensions of time such that TWC would not have to respond to more than approximately 28-30 IP addresses per month. *See* Exhibit 3. Dunlap agreed to these limitations specifically out of recognition that doing so was necessary to keep TWC's "costs down and your volume manageable." *Id.* At the time Dunlap and TWC reached this discovery agreement, Dunlap had already filed its request for court-ordered discovery in all but the *West Bay One* and *Maverick* cases.

Since then, Dunlap has repeatedly breached this agreement by serving TWC with three new subpoenas, including the one at issue in this motion. In this litigation, for example, Dunlap served on TWC a third-party subpoena seeking the identities of 224 individuals who it alleges are TWC subscribers, returnable within 30 days. Dunlap has also served on TWC two other subpoenas, seeking 809 and 398 IP address lookups, respectively.

Dunlap is now flooding TWC with third-party subpoenas, simultaneously seeking vast amounts of documents and information in multiple copyright litigations. If the Court compels TWC to answer all of these look up requests given its current staffing, it would take TWC nearly three months of full time work by TWC's Subpoena Compliance group, and TWC would not be able to respond to any other requests, emergency or otherwise, from law enforcement during this period. Goldberg Affidavit ¶ 7. TWC has a six-month retention period for its IP look up logs, and by the time TWC could turn to the law enforcement requests, many of these requests could not be answered. *Id.*

In light of counsel's refusal to abide by its express agreement, and because the present subpoena is highly burdensome and oppressive to TWC, this Court should quash the subpoena altogether. Alternatively, the Court should modify the subpoena to impose reasonable limitations on its scope. First, the Court should grant an extension of time such that TWC would

have to answer only 28 search requests per month for all of Dunlap's cases, which is the outer bounds of what TWC can handle consistent with its law enforcement obligations.  The Court should do so both because, as described below, plaintiff's counsel expressly agreed to that limitation, and also because such an extension is a reasonable limitation that will ensure that the burdens on TWC are not excessive and out of proportion to any benefits.  Second, the Court should change the cost provisions in its April 15, 2010 order (which were proposed by plaintiff's counsel).  *See* Dkt. 4.  Specifically, plaintiffs' counsel should pay all of TWC's costs in advance and on a per-IP address (rather than per-subscriber) basis because TWC incurs costs and burdens each time it looks up an IP address, as well as costs of notifying subscribers.  Third, the Court should order that plaintiff may not seek identifying information about IP addresses not specifically identified in its complaint.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 provides that a court *must* quash or modify a subpoena that "fails to allow a reasonable time to comply" or that "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3); *see also* Fed. R. Civ. P. 45(c)(1); *In re Micron Technology, Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (Rule 45 "requires district courts to be generally sensitive to the costs imposed on third parties") (internal quotation marks omitted).  Rule 26 also requires a court to limit discovery where "the discovery sought is unreasonably cumulative or duplicative" or where "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C); *see Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007) (Rule 26 applies to and constrains Rule 45 subpoenas).  An undue burden is one that is unreasonable or oppressive in light of all the circumstances of the case.  *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).  Courts have found that a third-

party subpoena can be overbroad based on the "time and expense required" to respond, including "the volume of material requested, the ease of searching for the requested documents in the form presented, and whether compliance threatens the normal operations of the responding [party]." *Linder v. Calero-Portcarrero*, 180 F.R.D. 168, 175 (D.D.C. 1998). If responding would require "an inordinate amount of time and resources," this Court may quash the subpoena or limit it. *Id.*

Courts must be particularly sensitive to the burdens placed on non-parties, and "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in the Rule 45 inquiry. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). The advisory committee notes to Rule 45 state that one purpose of the Rule is to ensure that "a non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court." Fed. R. Civ. P. 45 advisory committee notes. Moreover, requiring costs to be fixed in advance of production "will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs." *Id.* For these reasons, courts frequently order parties to pay the costs incurred by third parties in providing services to the judicial process by responding to Rule 45 subpoenas. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 496 (E.D. Pa. 2005) (ordering plaintiff to compensate third party costs for the cost of production).

## ARGUMENT

### I.   THIS COURT SHOULD QUASH THE SUBPOENA BECAUSE IT VIOLATES AN EXPRESS AGREEMENT AND BECAUSE COMPLIANCE WOULD BE HIGHLY BURDENSOME

Plaintiff's counsel, Dunlap Grubb and Weaver, has served multiple subpoenas on TWC in this and related litigation, in direct breach of its agreement with TWC. Because the subpoena in this case violates an express agreement, and because compliance would be highly burdensome to TWC, the Court should quash the subpoena.

## A.   The Court Should Quash the Subpoena Because It Violates An Agreement Reached Between TWC and Plaintiff's Counsel

The Court should quash the subpoena because it directly contradicts an agreement reached between TWC and plaintiff's counsel.  As discussed above, in part because Dunlap's prior subpoenas to TWC already strained TWC's resources, TWC previously endeavored to negotiate a solution.  TWC proposed that Dunlap agree not to compromise TWC's ability to assist law enforcement, and not to overwhelm its capacities, by limiting the total volume of requests for identifying information to no more than 28 IP addresses per month for its various cases combined.  In an email response, Dunlap expressly agreed to this limitation and agreed to grant automatic extensions of time such that TWC would not have to respond to more than approximately 28-30 IP addresses per month.  *See* Exhibit 3.  Plaintiff's counsel agreed to these limitations specifically out of recognition that doing so was necessary to keep TWC's "costs down and your volume manageable."  *Id.*  Dunlap reached this agreement during the pendency of this litigation, and with the specific acknowledgement that it applied to all future subpoenas that Dunlap's clients served on TWC.

Plaintiff has now simply reneged on that agreement.  Courts have repeatedly held that parties are free to reach agreement to limit the scope and burdens of discovery.  *See, e.g., Angell v. Shawmut Bank Connecticut Nat'l Ass'n*, 153 F.R.D. 585 (M.D.N.C. 1994) (enforcing private agreement regarding sharing costs of subpoena compliance); *cf.* Fed. R. Civ. P. 29 (permitting parties to agree to limit discovery).  In this case, plaintiff's counsel was on full notice of the burdens on TWC, reached a negotiated agreement to limit those burdens in exchange for a lower cost, and then reneged on that agreement.  Because the subpoena in this case directly violates a negotiated agreement, the Court should quash the subpoena.

**B.    The Court Should Quash The Subpoena Because Compliance Would Impose Excessive and Unreasonable Burdens on TWC**

Responding to the instant subpoena would impose a significant burden on TWC. TWC's compliance team comprises 4 full-time employees and 1 temporary employee. Goldberg Affidavit ¶¶ 3, 6. The work of TWC's compliance team consists principally of assisting law enforcement in combating serious crimes, including child endangerment, money laundering, and identity theft. *Id.* ¶ 6. Working at full capacity, TWC responds to these requests as quickly as it can. Even without these additional requests by Dunlap and his clients, law enforcement would prefer that TWC respond more quickly. Every additional IP lookup that TWC performs for Dunlap' partnership causes an additional delay in responding to law enforcement.

Looking up identifying information based on an IP address requires both centralized efforts at TWC's corporate offices, as well as local efforts at the local operations center where the relevant subscriber is located. Goldberg Affidavit ¶ 5. This process is time consuming, and requires the attention of multiple people in multiple locations. *Id.* TWC has performed a cost study that establishes that TWC's cost of looking up identifying information from one IP address is approximately $45. *Id.* ¶ 8. TWC incurs this cost on the basis of each IP address that it looks up, regardless of whether the IP addresses correlates to a subscriber that is the subject of another Dunlap request or a subscriber that is otherwise unknown to Dunlap. *Id.* In other words, if two IP addresses each relate to the same subscriber, TWC incurs costs for two IP searches, not one subscriber. *Id.*

Consistent with its law enforcement obligations, TWC has the capacity to respond to approximately 28 total IP lookups per month for all of Dunlap's various copyright lawsuits. Goldberg Affidavit ¶ 7. The cost to TWC for this lawsuit alone would be approximately $10,080 (224 IP addresses x $45 per IP address).

Notably, the burdens on TWC created by plaintiff's counsel's discovery abuses are caused in part by Dunlap's apparent violation of Rule 20's joinder requirements. It is not evident from the complaint in this case that there is anything common to the 358 defendants that would justify joining them in a single litigation. Plaintiff has simply alleged that different defendants, at different times and locations, each allegedly committed a similar form of wrongful conduct. There is no allegation linking the defendants together and no suggestion that their conduct arises "out of the same transaction [or] occurrence." Fed. R. Civ. P. 20(a)(2)(A).

Courts facing these identical circumstances have repeatedly held that a plaintiff may not join in a single action multiple defendants who have allegedly downloaded or facilitated the download of copyrighted material at different times and locations. *See, e.g., Laface Records, LLC v. Does 1 – 38*, No. 5:07-CV-298, 2008 WL 544992, at *2-3 (E.D.N.C. Feb. 27, 2008) (severing defendants because mere fact that defendants allegedly used same peer-to-peer protocol to commit copyright infringement does not support joinder); *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing multiple defendants in action where only connection between them was allegation that they used same ISP to conduct copyright infringement). In the *BMG* case, for example, the Court noted that the complaint alleged only that "defendants, at different times and dates, have engaged in separate and distinct acts of downloading or disseminating the sound recordings," which was not a basis for joinder. 2006 U.S. Dist. LEXIS 53237 at *5. The same is true here.

Thus, if the plaintiff wants to sue these 358 defendants, then it owes this court 358 separate filing fees, and it must file individual actions. Plaintiff then would be unable to combine together a single, massive discovery request with which to burden non-party ISPs such as TWC.

Because Dunlap has now served multiple, highly-burdensome subpoenas on TWC, with full notice that TWC lacked resources to comply, the Court should quash the subpoena in its entirety.

## II.   AT A MINIMUM, THIS COURT SHOULD IMPLEMENT STRICT LIMITATIONS ON THE SCOPE OF THE SUBPOENA

In the alternative, if the Court declines to quash the subpoena, it should modify the subpoena and implement strict limitations on the subpoena in order to limit the burdens on TWC.

### A.   The Court Should Grant An Extension Of Time Such That TWC Must Provide Information For Only 28 IP Address Lookups Per Month

At an absolute minimum, the Court should grant a significant extension of time that would permit TWC to respond to the subpoena on a timeframe that does not excessively tax its resources and inhibit law enforcement activities.

The Court should grant an extension of time because, as discussed above, plaintiff's counsel expressly agreed to one.  But whether or not the Court deems plaintiff's counsel to have agreed to an extension, an extension is manifestly appropriate.  With its current resources, TWC could reasonably respond to 28 IP address lookup requests per month collectively for all of these copyright cases; plaintiff is entitled to no more.  Any additional burden on TWC would require an "inordinate amount of time and resources" and would impose burdens far out of proportion to any benefit.  *Linder*, 180 F.R.D. at 175.  Plaintiff has chosen to file litigation whose scope is far out of line with analogous cases, and it cannot be surprised that TWC, a non-party, lacks the resources to handles its massive discovery requests.

### B.   The Court Should Require Plaintiff To Pay TWC's Costs In Advance

The Court should order plaintiff to pay TWC's costs of compliance in advance.  This Court's April 15, 2010 order granting discovery – which includes provisions that Dunlap drafted as a "proposed" order – contains cost provisions that promote rather than inhibit plaintiff's

discovery abuses.  The Court's order includes a provision stating that plaintiff need not pay any ISP's costs in advance, and that any costs may be imposed solely on a per-subscriber basis, even if the ISP incurs costs on a per-IP-address basis.  April 15, 2010 Order [Dkt. 4] at 3.  Plaintiff's counsel also added a provision that plaintiff need not pay for an ISP's costs for notifying its subscribers. *Id.* This Court should modify those provisions.

Rule 45 protects non-parties from significant expense, and courts have repeatedly ordered parties to pay costs to non-parties in advance.  This Court has discretion to order plaintiff to bear the expense of seeking third party discovery based on the burdens created and the equities of the particular case. *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992).  When a third party subpoena is overly broad, and when compliance would cause an undue burden, a district court does not abuse its discretion by ordering the subpoenaing party to bear all costs. *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996) (affirming district court's decision to order subpoenaing party to pay all costs); *accord Celanese Corp. v. E.I. du Pont de Nemours & Co.*, 58 F.R.D. 606, 610, 612 (D.Del. 1973) (requiring subpoenaing party to bear all reasonable expenses for responding to "very broad" subpoena).

The Court should also clarify that costs are to be calculated on a per-IP-address basis, rather than per subscriber.  TWC incurs costs for each IP address that it looks up; those costs do not diminish if two IP addresses happen to relate to the same subscriber.  Goldberg Affidavit ¶ 8.  Moreover, TWC incurs costs in order to notify its subscribers.  In order to protect TWC from incurring unreasonable and significant expense, the Court should order plaintiff to reimburse TWC for the costs incurred for each IP address lookup and for notifying the relevant subscribers.

**C.    The Court Should Limit Discovery To IP Addresses Identified In The Complaint**

Finally, Dunlap has engaged in the repeated practice of issuing subpoenas whose scope is far out of line with the underlying litigation. For example, in the *G2* litigation, Judge Kollar-Kotelly permitted plaintiff to issue subpoenas to identify defendants whose IP addresses were identified in the complaint. *See G2 Productions, LLC v. Does 1-83*, No. 10-041, Order, [Dkt. 5] (January 21, 2010), at 1. Plaintiff's counsel proceeded to issue much broader subpoenas that went far beyond the complaint, which forced a subscriber to file a motion to quash on the ground that the discovery was not authorized. Judge Kollar-Kotelly granted the motion to quash. *G2*, Order [Dkt. 12] (April 12, 2010) (quashing subpoena because same plaintiff's counsel sought identifying information regarding IP addresses not identified in complaint). Judge Kollar-Kotelly then specifically denied plaintiff's subsequent request for additional discovery on the ground that ensuring that the plaintiff seek information only about IP addresses named in the complain "ensures that the subpoenas issued to ISPs will not be overly broad." *G2*, Order [Dkt. No. 14] (April 19, 2010).

Plaintiff has done the same here: its complaint identifies 128 IP addresses allegedly corresponding to TWC subscribers, but the subpoena nearly doubles that amount and seeks information about 224 IP addresses. Complaint [Dkt. 1] Exhibit A. This Court's order granted permission for plaintiff to seek "to obtain the identity of each Doe Defendant." April 15, 2010 Order [Dkt. 4] at 2. Plaintiffs' subpoena, however, includes scores of IP addresses that do not correspond to any defendant in this case, and thus go well beyond the scope of the complaint. The result is simply additional burdens on TWC. The Court should therefore modify the subpoena to apply only to IP addresses listed in the complaint.

### III.   RULE 7(M) STATEMENT

On May 11, 2010, undersigned counsel spoke by telephone with Nicholas Kurtz and Jeffrey Weaver, counsel for plaintiff.  The parties were unable to resolve the issues presented by this motion.

### CONCLUSION

For the foregoing reasons, the Court should quash the subpoena issued to TWC in its entirety.   If the Court declines to quash the subpoena, it should at a minimum modify the subpoena.  Specifically, the Court should order that TWC need not respond to more than 28 IP address lookups per month collectively for all of the outstanding copyright lawsuits brought by Dunlap's plaintiffs.  The Court should also order plaintiff to pay in advance TWC's costs for each IP lookup and for notifying subscribers.  Finally, the Court should limit the subpoena to IP addresses identified in the complaint.

Date:  May 11, 2010                              Respectfully submitted,

Alexander Maltas (D.C. Bar No. 490099)
LATHAM & WATKINS LLP
555 11th St. NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Time Warner Cable Inc.*

14