**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CALL OF THE WILD MOVIE, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CA. 1:10-cv-00455-RMU** |
| | ) | |
| **DOES 1 - 1,062** | ) | |
| | ) | **Next Deadline: N/A** |
| **Defendants.** | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO MOTION TO QUASH OR MODIFY SUBPOENA**

**FILED BY THIRD PARTY TIME WARNER CABLE INC.**

1

TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................4

II. LEGAL PRINCIPLES ON A MOTION TO QUASH ..............................................................5

III. ARGUMENT ......................................................................................................................6

    A. PLAINTIFF HAS MET ITS THRESHOLD BURDEN TO ISSUE THE SUBPOENA6

    B. TWC HAS NOT PROVIDED ANY GROUND TO QUASH THE SUBPOENA .........8

        1. There was never an agreement between TWC and Plaintiff's counsel for this case .8

        2. TWC's misplaced arguments and attacks on Plaintiff's counsel show TWC's true intention to thwart's Plaintiff's case in this court and the court of public opinion ......10

        3. TWC has not justified an excessive or unreasonable burden .................................12

    C. TWC HAS NOT JUSTIFIED LIMITING THE SCOPE OF THE SUBPOENA .........13

        1. A reasonable extension of time is acceptable to Plaintiff but not the years suggested by TWC ....................................................................................................................13

        2. TWC's arguments regarding costs are unsubstantiated and show TWC's true intent to hold Plaintiff hostage in an effort to avoid compliance ...........................................14

        3. TWC has blatantly failed to inform the court that Plaintiff has served a First Amended Complaint in this case that lists all IP addresses in the subpoena at issue ..15

IV. CONCLUSION....................................................................................................................17

TABLE OF AUTHORITIES

**Cases**

Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1 (D.D.C. 2008) .........................................6, 8

Fonovisa, Inc. v. Does 1-19, No. 07-1515, 2008 WL 919701 (W.D.Pa. April 3, 2008) ................6

LaFace Records, LLC v. Does 1-38, 2008 WL 544992 (E.D.N.C.) ..............................................10

Heat & Control, Inc. v. Hester Industries, Inc.,

      785 F.2d 1017, 228 USPQ 926 (Fed.Cir. 1986) .............................................................. 5-6

Horizons Titanium Corp. v. Norton Co., 290 F.2d 421 (1st Cir. 1961)..........................................5

In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C. 1992) ............................................................14

Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 125 S.Ct. 2764 (2005) .....11

Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395 (D.C.Cir. 1984)...............................5

United States v. Int'l Bus. Mach. Corp., 83 F.R.D. 97 (S.D.N.Y. 1979) ........................................5

Westinghouse Electric Corp. v. City of Burlington, 351 F.2d 762 (D.C.Cir. 1965) ......................5

**Statutes**

Fed. R. Civ. P. Rule 26 ...................................................................................................................5

Fed. R. Civ. P. Rule 45 .........................................................................................................5, 13, 14

I. INTRODUCTION

Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference was granted by this court on April 15, 2010.  Pursuant to that order, Plaintiff served various non-party Internet Service Providers ("ISPs") with subpoenas to identify the Doe Defendants.

To briefly summarize Plaintiff's motion for discovery, Plaintiff has identified certain Defendants who have unlawfully copied and distributed Plaintiff's motion picture, *"Call of the Wild"* (the "Movie"), over the Internet.  At this point, Plaintiff has only been able to identify the Doe Defendants by their Internet Protocol ("IP"), the date and time of alleged infringement, and additional data which allows Plaintiff to identify each Doe Defendant with certainty such as the file name, size, hash factor and GUID.  However, the only way that Plaintiff can determine Defendants' actual names is from information in the possession of the ISPs to which Defendants subscribe and from which Defendants obtain Internet access, which information is readily available to the ISPs from documents they keep in the regular course of business.

In response to the subpoenas issued pursuant to the court's order, Time Warner Cable Inc. ("TWC") has objected on various grounds, none of which justify quashing or even limiting the scope of the subpoena.  First, TWC argues that the court should enforce an agreement made by TWC and counsel for Plaintiff's regarding subpoenas issued in two prior cases.  However, that agreement has no application in this case.  Second, TWC argues that responding to the subpoena would impose excessive and unreasonable burdens.  However, TWC's arguments and evidence in support of this position are severely flawed.  Third, TWC argues that Plaintiff should pay costs in advance, but TWC's position is again flawed and shows its true intent to hold Plaintiff hostage by withholding information necessary to Plaintiff's case so that TWC can avoid compliance.  Lastly, TWC argues that the court should limit discovery to IP addresses listed in

the complaint.  However, TWC disingenuously has failed to acknowledge that Plaintiff has filed

a First Amended Complaint in this case that does list all IP addresses stated on the subpoena in

question.

Overall, because the motion does not provide good cause for quashing the subpoena, the

court should not quash the subpoena.  Further, because TWC has not provided good cause to

limit the subpoena, Plaintiff requests that the motion be denied in its entirety.


## II. LEGAL PRINCIPLES ON A MOTION TO QUASH

A person served a discovery subpoena may move either for a protective order under Rule

26(c) or for an order quashing or modifying the subpoena under Rule 45(c)(3).  Rule 26(c)

authorizes district courts, upon a showing of "good cause" by "a party or by the person from

whom discovery is sought" to "make any order which justice requires to protect a party or person

from annoyance, embarrassment, oppression, or undue burden or expense."  Rule 45(c)(3)

provides that the court may quash or modify the subpoena if it requires disclosure of privileged

or other protected matter, if no exception or waiver applies, or if it subjects a person to undue

burden.

The burden of persuasion in a motion to quash a subpoena is borne by the movant, and

the "burden is particularly heavy to support a 'motion to quash as contrasted to some more

limited protection.'"  Westinghouse Electric Corp. v. City of Burlington, 351 F.2d 762, 766

(D.C.Cir. 1965) (denying a motion to quash supported by two affidavits); United States v. Int'l

Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979); Horizons Titanium Corp. v. Norton Co.,

290 F.2d 421, 425 (1st Cir. 1961); see Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d

395, 403-04 (D.C.Cir. 1984).  The district court must balance "the relevance of the discovery

sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." Heat & Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024, 228 USPQ 926, 931 (Fed.Cir. 1986) (citing Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 560, 564 (7th Cir. 1984)).

Additionally, on a motion to quash a subpoena, the merits of a case are not at issue. *See* Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) ("factual and technical arguments . . . are unrelated to any appropriate inquiry associated with a motion to quash."); *see also* Fonovisa, Inc. v. Does 1-19, No. 07-1515, 2008 WL 919701, at *8 (W.D.Pa. April 3, 2008) (holding that if the individual or entity whose identifying information was sought by a subpoena served on an ISP "believes that it has been improperly identified by the ISP, [the individual or entity] may raise, at the appropriate time, any and all defenses, and may seek discovery in support of its defenses").

III. ARGUMENT

   A.  PLAINTIFF HAS MET ITS THRESHOLD BURDEN TO ISSUE THE
       SUBPOENA.

Initially it must be noted that the court has already determined that Plaintiff has met its threshold burden to obtain further information about the Doe Defendants by identifying the Doe Defendants with sufficient specificity and showing that Plaintiff's suit can withstand a motion to dismiss.  As more fully set out in Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference [Doc. No. 2], Plaintiff identified the unique IP address for each Defendant, along with the date and time of alleged infringement and ISP that provided Internet access to each Defendant and assigned the unique IP address to the Defendant, as well as other

supporting data detailed above, from information provided to it by Guardaley.  This information

was obtained by Guardaley's proprietary tracing software program to trace the IP address for

each Defendant, as detailed in the declarations of Benjamin Perino and Patrick Achache.

However, Plaintiff is unable to obtain the true identity of the Doe Defendants without issuing

subpoenas to the non-party ISPs, and the Defendants must be identified before this suit can

progress further.  Therefore, Plaintiff has already demonstrated good cause for the requested

information.

Further, Plaintiff has made a prima facie evidentiary showing that the IP addresses it has

identified and subpoenaed to various ISPs did make an unlawful download of Plaintiff's Movie

on a specific date and time.  Again, Plaintiff utilized proprietary technology developed and

instituted by Guardaley that detects the unauthorized distribution of movies and other

audiovisual content and files over online media distribution systems.  *See* Achache Declaration

(filed as Exhibit B to Plaintiff's Motion for Leave to Take Discovery [Doc. No. 2]) ¶ 4.

Accordingly, Defendants' IP addresses at the time of the alleged infringement were included in

this case because they were offering files corresponding to Plaintiff's Movie for unlawful

transfer or distribution.  *See id.* at ¶ 8.  In fact, Guardaley actually downloaded Plaintiff's Movie

from the IP address assigned to these Defendants, just as it does with all Doe Defendants.  *See id.*

at ¶ 9.  Lastly, Guardaley confirmed that the files that Defendants distributed were actually

Plaintiff's Movie by watching both and comparing them.  *Id.* at ¶¶ 16-17.

Here, Plaintiff has already demonstrated good cause for the subpoena in that the

information is absolutely necessary in this case so that Plaintiff can ascertain the true identities of

the alleged infringing Doe Defendants and that Plaintiff can only obtain the information by
issuing subpoenas to the ISPs.[1]


B.  TWC HAS NOT PROVIDED ANY GROUND TO QUASH THE SUBPOENA.

1.  There was never an agreement between TWC and Plaintiff's counsel for this
case.

TWC argues that the court should enforce some agreement between TWC and Plaintiff's
counsel.  The only support TWC presents for there being an agreement between TWC and
Plaintiff's counsel is the email chain – Exhibit 3 to TWC's motion.  However, not only has TWC
and its counsel again conveniently failed to produce the whole story to the court, nothing in that
email chain shows an agreement for this case.

Within the email chain, the last communication to TWC by Plaintiff's counsel
specifically states that Plaintiff's counsel "may need to request more subpoenas."  In response,
TWC's counsel merely stated "[t]hank you."  Exhibit 3 to the Declaration of Thomas M. Dunlap,
attached hererin.  Obviously, there was no definitive meeting of the minds on how the parties
would handle future subpoenas, including the one at issue in this case.[2]

In fact, TWC and counsel for Plaintiff did later discuss the subpoena in this case.  During
that discussion, Plaintiff's counsel definitively and repeatedly stated that Plaintiff could not limit

---

[1]  In a case almost identical to this case, this court denied a motion to quash by a doe defendant
wherein the court held that the subpoena complied with the Federal Rules of Civil Procedure
whether under a good cause standard or prima facie showing of copyright infringement.  Arista
Records LLC v. Does 1-19, 551 F. Supp. 2d 1, 7 (D.D.C. Apr. 28, 2008) (Kollar-Kotelly, J.).

[2]  The only thing that the email chain does show is that Plaintiff's counsel has been held hostage
by TWC in having to pay TWC's unsubstantiated "costs" before TWC would divulge the
information.

its IP requests to 28 a month, as that would prevent Plaintiff from conducting discovery on the Doe Defendants for *years*. On April 14, 2010, Plaintiff's counsel sent TWC an email restating Plaintiff's position. Dunlap Decl., Ex. 4.[3]

While there never was an agreement dictating the volume of IP addresses and costs in this case, Plaintiff's counsel has tried repeatedly to meet and confer with TWC in attempts to facilitate a response to this subpoena and the subpoenas issued in the similar cases. However, TWC has not engaged Plaintiff's counsel in these proposals.

Rather, TWC's tactics show that it is more intent on trying to avoid compliance, while currying favor with its subscribers and potential subscribers. After Plaintiff's counsel's email of April 14, 2010, and after Plaintiff's counsel served this subpoena and the two subpoenas in similar cases to TWC, Plaintiff's counsel did not hear from TWC or its counsel for nearly a month. *See* Dunlap Decl. at ¶ 6. When TWC did contact Plaintiff's counsel, it was only to apprise Plaintiff's counsel that TWC was filing a motion to quash. *See* Dunlap Decl., Ex. 5.[4]

Further, when Plaintiff's counsel again tried to resolve the issues with TWC without court intervention, TWC again showed it had no real intent to work with Plaintiff's counsel. Therein, Plaintiff's counsel did meet and confer with TWC's counsel before the filing of the motion to quash and stated that it would consent to extending the subpoena production dates so

---

[3] Further, it is inconceivable that Plaintiff's counsel would somehow bind *future* clients in future cases, as Plaintiff's counsel would not have the authority to make such an agreement.

[4] TWC's questionable tactics are highlighted by the fact that it filed its three motions to quash on the same day (May 13, 2010) even though the one other similar case did not have production dates for those subpoena until a later date (*West Bay One* case [1:10-cv-00481-RMC] – May 21, 2010), and this case does not have a production date for its subpoena until June 4, 2010. It has become readily apparent that TWC never really intended to meet and confer with Plaintiff's counsel to resolve the disputes at issue, instead always intending to invoke the court's intervention and to make its position public for purposes of attracting subscribers who would feel "safe" that TWC will protect their identities in the event they were accused of illegally downloading copyrighted content.

that the parties could reach an agreement.  *See* Dunlap Decl. at ¶ 9.  However, TWC merely filed

the motions to quash.  Subsequently, Plaintiff's counsel again reached out to TWC and believed

that the parties had reached an agreement.  *See id.*  However, TWC then demanded that

Plaintiff's counsel pay for TWC's attorneys' fees on this motion to quash.  *Id.*  Such conduct

simply does not show a good faith effort on TWC's part to resolve the parties' differences and

come to an agreement that would accommodate both sides.

2.  <u>TWC's misplaced arguments and attacks on Plaintiff's counsel show TWC's true intention to thwart's Plaintiff's case in this court and the court of public opinion.</u>

In yet another unnecessary jab at Plaintiff's counsel, TWC states that the plaintiffs in the

various cases initiated by Plaintiff's counsel have somehow misled the court because "they

declined to inform this Court that the cases were related, even though they each allege the same

conduct, on the same theory, seeking the same relief."  Motion at p. 2.  This is yet another

instance of TWC trying to have its cake and eat it, too.  In this argument, when it is convenient

for TWC, TWC argues that all of these cases "allege[] virtually identical facts."  *Id.*

Contradicting itself, TWC later argues that Plaintiff's counsel has engaged in discovery

abuses because these cases improperly join the Doe Defendants and that "[t]here is no allegation

linking the defendants together and no suggestion that their conduct arises 'out of the same

transaction [or] occurrence.'"  Motion at p. 10 (citing Fed. R. Civ. P. 20(a)(2)(A)).[5]  TWC cannot

have it both ways – the allegations are either related or they are not.  In fact, TWC's own

---

[5]  There is no argument by TWC, or any justification, as to how TWC even has standing to assert that Plaintiff's case improperly joins multiple Defendants.  The cases cited by TWC deal specifically with motions made by doe defendants.  *See* <u>LaFace Records, LLC v. Does 1-38</u>, 2008 WL 544992 (E.D.N.C.).

arguments do nothing more than strain its credibility and that of its counsel – they will do and say anything to gather support for their position.[6]

Additionally, TWC questions the validity of the cases initiated by Plaintiff's counsel because they are "far out line with other comparable copyright infringement cases."  Motion at p. 2.  Therein, on multiple occasions, TWC highlights the fact that it is not a party to this case, but it appears that TWC is utilizing that fact to garner public support for its position and possibly in an attempt to gain more subscribers who would value TWC's efforts to protect the privacy of demonstrated copyright infringers.  To the extent TWC's tactics are just that – letting the public know that TWC is a good ISP for copyright infringers because TWC will fight any subpoenas related to infringers' activities – TWC exposes itself to a claim for contributory copyright infringement.  *See generally,* Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 125 S.Ct. 2764 (2005) (holding that one who distributes a service with the object of promoting its use to infringe copyright is liable for the resulting acts of infringement by third parties).

Nevertheless, TWC's arguments regarding joinder and the general appropriateness of the case and Plaintiff's allegations are not the appropriate topics on a motion to quash.  The merits of the case are simply not at issue.

---

[6]  Further, it appears that TWC is advocating that responding to a hundred subpoenas, each asking for one ISP address, would be easier than responding to one subpoena asking for a hundred.  Such an approach does not make any sense for Plaintiff, TWC, or the courts.

3.  <u>TWC has not justified an excessive or unreasonable burden.</u>

First, it should be noted that the only evidence in support TWC's claims on its subpoena

compliance capabilities are from its in-house counsel.  TWC has not even attempted to present

any declarations or evidence from the actual people that conduct the IP address searches.

Second, TWC's claims of its capabilities are severely lacking in detail.  There is no detail

of how long it takes to look up an IP address, how many each employee does, etc.  The only

information offered to the court is that the looking up the requested information is a "multi-step"

process that is "time consuming and requires the work of multiple people at multiple locations."

Exhibit 2 to TWC's motion (Affidavit of Craig Goldberg) at ¶ 5.

Third, TWC's claims of capabilities are questionable, as Plaintiff has learned that TWC is

capable of much more productivity.  In attempting to resolve the parties' conflict without court

intervention, Plaintiff's counsel has been attempting to negotiate a resolution.  Within those

discussions, TWC proposed that it could produce responses for 45 IP addresses per month.  *See*

Dunlap Decl. at ¶ 9.

Further, in responding to the subpoenas in the *G2 Productions* and *Worldwide Film*

*Entertainment* cases, TWC was able to get information related to 200 IP address requests within

a mere week of receiving the subpoenas.  *See* Dunlap Decl. at ¶ 2.

Lastly, in dealing with other ISPs in this case and the other similar cases, Plaintiff's

counsel has seen much greater productivity at much less expense from every other ISP.  For

example, in the Achte/Neunte boll Kino Beteiligungs GMBH & CO KG v. Does 1-2,094 case,

Verizon produced responses for 343 IP address searches in the same time provided to TWC and

charged Plaintiff's counsel only $5,014, which amounts to $14.62 per IP search.  *See* Dunlap

Declaration, Ex. 6.

Overall, TWC has not shown any actual evidence to justify good cause in quashing the subpoena.  At some point, given the nature of TWC's business and the rampant copyright infringement its business clearly facilitates, TWC needs to devote more resources to enable illegal activity to be stopped.  Accordingly, TWC's alleged lack of capacity is unacceptable in light of the high volume of infringers that are using its service.

## C.   TWC HAS NOT JUSTIFIED LIMITING THE SCOPE OF THE SUBPOENA.

### 1.   A reasonable extension of time is acceptable to Plaintiff but not the *years* suggested by TWC.

A motion to quash or modify a subpoena is only proper when "fails to allow a *reasonable* time to comply."  Fed. R. Civ. P. 45(c)(3)(A)(i) (emphasis added).  It should first be noted that the time for compliance stated in the subpoena was Plaintiff's attempt to be in compliance with this court's order, which states "that if the ISP and/or any defendant seeks to move to quash any subpoena authorized by this Memorandum Order, that individual or entity shall do so before the return date of the subpoena, which shall be set for thirty days from the date of service of the subpoena."  [Doc. No. 4]

Further, Plaintiff and its counsel have always expressed to TWC that they are willing to grant TWC reasonable extensions to comply with the subpoena.  However, that timeframe cannot span the *years* that TWC suggest it would take to comply with the subpoenas.  Such an extension is not reasonable and seriously thwarts Plaintiff's ability to prosecute its case.

2. <u>TWC's arguments regarding costs are unsubstantiated and show TWC's true
intent to hold Plaintiff hostage in an effort to avoid compliance.</u>

Rule 45 only provides for costs to be paid to a non-party served with a subpoena if it

incurs "*significant* expense resulting from compliance." Fed. R. Civ. P. Rule 45(c)(2)(B)(2)

(emphasis added). "However, 'protection from significant expense' does not mean that the

requesting party necessarily must bear the entire cost of compliance…." <u>In re Exxon Valdez</u>,

142 F.R.D. 380, 383 (D.D.C. 1992). "[I]t is relevant to inquire whether the putative non-party

actually has an interest in the outcome of the case, whether it can more readily bear its costs than

the requesting party, and whether the litigation is of public importance." *Id.* (internal citations

omitted).

Here, TWC states that it has done a cost study establishing a cost of $45 per IP address

search. Ex. 2 to TWC Motion (Craig Goldberg Affidavit) at ¶ 8. However, TWC conveniently

failed to actually include the cost study in its court filings. Again, TWC is only giving the court

part of the story.

Attached as Exhibit 2 herein is the supposed cost study that TWC provided to Plaintiff's

counsel. Dunlap Decl., Ex. 2. Within that "cost study," all of the costs are associated with

salaried employees.[7] Therein, as stated by TWC's own cost study, responding to Plaintiff's

subpoena would actually *not* incur any additional expenses.

TWC has stated that it would simply shift 5% of its employees' subpoena compliance

time from law enforcement to Plaintiff's subpoena. *See* Ex. 2 to TWC' Motion (Craig Goldberg

Affidavit) at ¶ 7. Though, TWC states that it could "burden its subpoena team with 5% more IP

---

[7] In the purported "cost study" done by TWC, it states that for the "local operations"
aspect of an IP address search, it takes approximately 20 minutes per IP address. *See* Dunlap
Decl., Ex. 3.

look up requests," TWC also states that this would result in a 5% "corresponding" delay in law enforcement responses.  Accordingly, TWC would not incur additional time or expenses to respond to Plaintiff's subpoena, it would simply make room for Plaintiff's requests within its current capacity.

Additionally, TWC cannot credibly claim that the cost of compliance is "significant" when compared to the $4.6 billion in revenue it received in just the first quarter of 2010.  *See* Dunlap, Ex. 7.  Further, TWC obtains a significant portion of its revenue from its subscribers, the Doe Defendants in this case, and it could be argued that all of TWC's revenue results either directly or indirectly from its subscribers/the Doe Defendants.  *See id.*

Overall, TWC's own arguments show that it does not actually incur additional costs or expenses in responding to Plaintiff's subpoena – it incurs the expenses, i.e. its employees' salaries, regardless of whether it had to respond to Plaintiff's subpoena or not.  Therefore, TWC is not entitled to any costs to be paid by Plaintiff.

3.  <u>TWC has blatantly failed to inform the court that Plaintiff has served a First Amended Complaint in this case that lists all IP addresses in the subpoena at issue.</u>

While TWC has made it a point to inform the court of the proceedings in the other cases initiated by Plaintiff's counsel, it has blatantly left out some important aspects of those proceedings and has completely failed to inform the court of Plaintiff's filing of a First Amended Complaint in this case.  Therein, TWC again attacks Plaintiff's counsel and argues that the subpoena's scope somehow exceeds the discovery authorized by this court.  However, TWC's attack simply does not provide the complete picture.

In the *G2 Productions* case (1:10-cv-00041-CKK), Judge Kollar-Kotelly's April 12, 2010

order granted a Jane Doe's motion to quash/vacate a subpoena served on Comcast, stating that:

> Upon examination of the subpoena, it is clear that the subpoena requests more information than this Court authorized in its January 21, 2010, Order. The Court granted Plaintiff leave to take discovery only with respect to the 83 John Doe Defendants enumerated in the Complaint. The IP addresses for those 83 John Does were explicitly identified in Exhibit A of the Complaint. Exhibit A identifies Does 49-83, i.e., 35 of the 83 Defendants, as obtaining their internet service from Comcast. However, the subpoena served on Comcast seeks information pertaining to 75 IP addresses, including Jane Doe's, whose address is not listed in Exhibit A of the Complaint. Accordingly, the Court has not authorized discovery of Jane Doe's personal information, and the Court shall therefore GRANT Jane Doe's Motion to Quash.

[Doc. No. 12 (1:10-cv-00041-CKK)][8]

In response to that order, G2 Productions filed a Motion for Leave to Take

Additional Discovery requesting the court allow G2 Productions to conduct discovery on

IP addresses that G2 Productions had obtained since the filing of the complaint.  [Doc. 13

(1:10-cv-00041-CKK)]  On April 19, 2010, the Judge Kollar-Kotelly denied G2

Productions' motion and stated:

> The Court finds that good cause does not exist to grant Plaintiff's motion for leave to take additional discovery until the individuals whose information is sought are added to the Complaint as defendants and identified by IP address in the same manner as the existing 83 John Doe Defendants. Requiring Plaintiff to amend its Complaint to add additional John Doe Defendants ensures that the subpoenas issued to ISPs will not be overly broad and creates at least a partial public record of the discovery process. Accordingly, Plaintiff's [13] Motion for Leave to Take Additional Discovery is DENIED. Plaintiff may amend its Complaint to add additional John Doe Defendants as permitted by Federal Rule of Civil Procedure 15. Once the Complaint is amended, Plaintiff may take discovery

---

[8]  As with the *G2 Productions* case, Plaintiff in this case served the subpoena to TWC with IP addresses for all of the Doe Defendants that Plaintiff was able to identify up to the time of the subpoena.  Plaintiff believed the subpoena was acceptable because Plaintiff had specifically requested to conduct discovery on those Doe Defendants that Plaintiff identified in Exhibit A to the complaint, *as well as any other infringers that Plaintiff identifies during the course of this litigation*, and because the Court's order granted Plaintiff leave to serve discovery on the specified ISPs without any direct reference to the specified IP addresses.

relating to additional defendants pursuant to the Court's January 21, 2010, Order, or seek a further leave to take additional discovery.

[Doc. No. 14 (1:10-cv-00041-CKK)]

Judge Kollar-Kotelly's rationale stated in the April 19, 2010 order therefore completely undermines TWC's argument and shows that Plaintiff's subpoena to TWC is proper.  Judge Kollar-Kotelly stated that G2 Production's addition of other Doe Defendants in an amended complaint would ensure the subpoenas to the ISPs were *not* overly broad.[9]  Further, Judge Kollar-Kotelly implied that once G2 Productions amended its complaint, good cause would exist to take discovery on Doe Defendants *in addition* to those listed in the complaint.[10]

Accordingly, on May 12, 2010 (before TWC filed its motion to quash), Plaintiff filed its First Amended Complaint in this case.  [Doc. No. 5]  All of the IP addresses in the subpoena to TWC are listed in the First Amended Complaint's Exhibit A.  Therefore, Plaintiff's subpoena to TWC is not overly broad, and it should not be listed to just those IP addresses listed in Plaintiff's initial complaint.

## IV. CONCLUSION

Overall, TWC has not demonstrated any reason to quash the subpoena.  Further, TWC's justifications for limiting the subpoenas do not demonstrate good cause.  TWC has simply not shown any evidence to justify its inability to comply with the subpoena or the costs it supposedly

---

[9] "Requiring Plaintiff to amend its Complaint to add additional John Doe Defendants ensures that the subpoenas issued to ISPs will not be overly broad and creates at least a partial public record of the discovery process."  [Doc. No. 14 at p. 2 (1:10-cv-00041-CKK)]

[10] "The Court finds that good cause does not exist to grant Plaintiff's motion for leave to take additional discovery *until* the individuals whose information is sought are added to the Complaint as defendants and identified by IP address in the same manner as the existing 83 John Doe Defendants."  [Doc. No. 14 at p. 2 (emphasis added) (1:10-cv-00041-CKK)]

incurs.  TWC has not proved any detailed information on their procedures and processes why they simply cannot do better.  Therefore, TWC has not met its burden on its motion to quash.

On the other hand, Plaintiff has shown good cause for obtaining information related to the Doe Defendants from the non-party ISPs, especially when considering that these ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data.  Therefore, the court should deny TWC's motion in its entirety and at least allow Plaintiff the opportunity to conduct discovery and obtain evidence to prove the copyright infringement and irreparable harm in this case.

Respectfully Submitted,

CALL OF THE WILD MOVIE, LLC

**DATED**:  May 24, 2010

By:     /s/ Tom Dunlap
        Thomas M. Dunlap (D.C. Bar # 471319)
        Nicholas A. Kurtz (D.C. Bar # 980091)
        DUNLAP, GRUBB & WEAVER, PLLC
        1200 G Street, NW Suite 800
        Washington, DC 20005
        Telephone: 202-316-8558
        Facsimile: 202-318-0242
        tdunlap@dglegal.com
        nkurtz@dglegal.com
        *Attorney for the Plaintiff*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2010, a true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO MOTION TO QUASH OR MODIFY SUBPOENA FILED BY THIRD PARTY TIME WARNER CABLE INC. was sent via first-class mail to the following:

Alexander Maltas
Latham & Watkins LLP
555 11th St., NW
Suite 1000
Washington, DC 20004
*Counsel for Time Warner Cable Inc.*

/s/ Nick Kurtz
Nicholas A. Kurtz