**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CALL OF THE WILD MOVIE LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**DOES 1 – 1,062**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:10-cv-00455-BAH |

**REPLY MEMORANDUM OF *AMICI CURIAE***

*Amici curiae* Electronic Frontier Foundation, Public Citizen, American Civil Liberties Union Foundation and ACLU of the Nation's Capital file this Reply to set the record straight on several points.  First, since this Court has recently been assigned this case and several other similar ones, *amici* provide some general background on what we believe is an emerging and dangerous litigation model that this case has helped to pioneer. Second, Plaintiff's briefing misstates the record in related cases pending before Judge Collyer and we believe this court should know the full story.  Third, we respond to Plaintiff's erroneous arguments regarding personal jurisdiction and joinder and discuss some recent decisions by federal courts handling similar cases in other parts of the country that may assist this Court in its evaluation of those issues, as well as the applicable First Amendment tests.

**I.    BACKGROUND ON THIS AND SIMILAR CASES AFFECTING
       APPROXIMATELY 100,000 PEOPLE NATIONWIDE.**

This case was one of the first of a growing number of mass copyright lawsuits that have been filed across the country, which have to date affected approximately 100,000 people nationwide.  These mass cases, most involving thousands of unnamed "John Does" sued together, raise serious common problems of fairness, due process, and individual justice.  They

are generally brought against individuals from all over the country and often, as in this case, allege infringement of a single work. [1]

The cases do not, however, appear to be filed with the intention of litigating them— certainly not against the vast majority of the defendants.  Instead, it seems that the plaintiffs' lawyers hope to take advantage of the threat of an award of statutory damages and attorneys' fees, the shallow pockets of the defendants, the defendants' ignorance about their potential defenses, and the fact that the cases are often filed in jurisdictions far away from where most defendants reside, in order to induce the defendants into settling the case for payments of roughly $1,500 to $2,500 each.  This amount seems chosen to be less than a defendant would likely have to spend just to hire a lawyer to defend the initial stages of the case.  And strong defenses exist for many of those sued:  for example, the plaintiff may not be able to prove actual damages caused by any particular defendant and may not have any basis for seeking statutory damages. Thus, a ruling on whether a plaintiff will be able to obtain the identities of the defendants may be the last chance a court has to ensure that the defendants are treated justly – and that they will not be induced to settle by the expense of defending themselves in a far-away district and the intimidating effect of being named in a lawsuit, with plaintiffs' counsel taking advantage of unrepresented Does' misunderstanding of the complexities of copyright law.

It is also likely why the Plaintiff in this case has repeatedly claimed that the arguments raised are "premature." Plaintiff's Opposition to Memorandum of Amici Curiae ("Opp. to Am.") at 3.  It knows that if it is allowed to obtain the names and addresses of the Does despite this Court's lack of jurisdiction over them, the problems with misjoinder, and its failure to comply with the applicable First Amendment tests, and to use that information to contact those

---

[1] As of February 1, 2011, by an informal count, approximately 100,000 people have been sued in similar (in some cases nearly identical) complaints arising from the alleged use of the Bittorrent computer program to upload and download movies on the Internet. *See* Eriq Gardner, *More Than 100000 People Have Been Sued for Sharing Movies in the Past Year*, Hollywood Reporter, (Feb. 1, 2011), http://www.hollywoodreporter.com/blogs/thr-esq/100000-people-sued-sharing-movies-95095

individuals directly, many of those sued will simply settle.

As explained below, several courts have recognized the abusive nature of this litigation model, and have taken steps – such as severing the improperly joined Doe defendants – to force the plaintiffs to correct their course. *See* Request for Judicial Notice in Support of Motion for Leave to File as Amici In Support of Time Warner Cable's Motion to Quash or Modify Subpoenas, Docket No. 11-2, Exs A-C; Request for Judicial Notice in Support of Reply ("Reply RJN"), Exs. B-D. *Amici* urge this Court to do the same.

## II.   PLAINTIFF MISSTATES THE RECORD OF THE CASES BEFORE JUDGE COLLYER

Plaintiff makes several misstatements and omissions about developments in the *Achte/Neunte* and *West Bay One* cases before Judge Collyer.   Plaintiff suggests that Judge Collyer has given short shrift to the numerous jurisdictional objections raised by both *amici* and the Does in those cases. Opp. to Am. 2.  In fact, Judge Collyer has been concerned about the issue of personal jurisdiction, particularly once defendants began to submit affidavits establishing that they lived thousands of miles away from the District of Columbia.

To that end, Judge Collyer has taken several steps.  First, after expressing concerns about just this issue during the hearing on Time Warner Cable's motion to quash, she ordered the parties and *amici* to confer and develop a notice that must be sent to every Doe defendant (by his or her ISP) for which Plaintiff has subpoenaed identifying information.  *See Achte/Neunte Boll Kino Beteiligungs GMBH & Co v. Does 1-4577,* Case No. 10-cv-453-RMC, ("*Achte/Neunte*"), Order, Docket No. 34 (June 2, 2010). The notice that was ultimately adopted, attached as Exhibit A to the Request for Judicial Notice filed herewith, provides important information to the Does about their rights and options – specifically including the option of contesting jurisdiction.

Second, on September 10, 2010, Judge Collyer ordered that the plaintiffs in both cases show cause why defendants who had submitted affidavits regarding their locations should not be dismissed. *Achte/Neunte,* Order, Docket No. 46 (Sept. 10, 2010).; *West Bay One v. Does 1-1,653*, Case No. 10-481-RMC ("*West Bay*"), Order, Docket No. 38 (Sept. 10, 2010).  The plaintiffs

responded to that order, and then asked the court to extend time for service on the defendants for five years, complaining that they should not be forced to actually litigate the case until every one of the thousands of Does had been identified. (*Achte/Neunte,* Motion for Further Extension of Time, Docket No. 110; *West Bay,* Motion for Further Extension of Time, 56).  On November 19, 2010, Judge Collyer ordered the plaintiffs to file a Second Amended Complaint "identifying by name and address Defendants over whom it reasonably believes the Court has personal jurisdiction and whom it wants to sue," or, if they did not have that information, the IP addresses of those over whom the plaintiffs continued to claim the Court had jurisdiction. *Achte/Neunte,* Order, Docket No. 143; *see also West Bay*, Order Granting in Part and Denying in Part Plaintiff's Motion for Extension of Time to Name and Serve Defendants, Docket No. 58.  She also required the plaintiffs to submit a status report as to the Does for whom they did not have identifying information by February 18, 2011.

In response to Judge Collyer's Order, the plaintiffs filed amended complaints that named just *four* defendants in total (after originally suing several thousand Does), along with a few hundred "Does" for whom, presumably, they did not yet have identifying information from the relevant Internet Service Providers. On December 14, 2010, Judge Collyer dismissed all the other defendants. *Achte/Neunte,* Order, Docket No. 151; *West Bay*, Order, Docket No. 68.

In short, and contrary to Plaintiff's intimation, while Judge Collyer initially allowed discovery to proceed in the *Achte/Neunte* and *West Bay One* lawsuits, she never ruled that the plaintiffs in those cases had in fact shown good cause for believing that the Court had jurisdiction over the defendants.  Instead, she required Plaintiffs to "put up or shut up," with telling results given that the plaintiffs finally had to concede they had no reasonable belief in the court's jurisdiction over most defendants.

## III.   DISMISSAL IS APPROPRIATE AT THIS JUNCTURE.

In opposing the Motions to Quash and to Dismiss, Plaintiff claims that it need not meet its burden to present facts sufficient to establish personal jurisdiction until it has received full identifying information about each and every one of the 1,062 unnamed individuals it has sued

here.  Plaintiff is wrong.

### A.   Plaintiff Has Failed To Meet Its Burden Of Establishing Personal Jurisdiction

Here, as in every case, Plaintiff bears the burden of establishing personal jurisdiction.

*Reuber v. United States,* 750 F.2d 1039, 1052 (D.C. Cir. 1985).  To meet this burden a plaintiff

must show "a sufficient nexus between the specific tortious conduct alleged and the District for

us to conclude that 'the defendant[s'] conduct and connection with the forum state are such that

they should reasonably anticipate being haled into court there.'"  *Id.* at 1050, quoting *World-

Wide Volkswagon Corp v. Woodson,* 444 U.S. 286, 297 (1980).

In this District, this Court has recognized that: "the plaintiff bears the burden of

establishing a factual basis for the court's exercise of personal jurisdiction over the defendant."

*Zhu v. Gonzales,* 2006 WL 1274767 (No. 04-cv-1408 (D.D.C. May 8, 2006)), citing *Capital

Bank Int'l. Ltd v. Citigroup, Inc.,* 276 F. Supp. 2d 72, 74 (D.D.C. 2003).  Additionally, "[t]he

plaintiff must allege specific acts connecting the defendant with the forum."  *Id. citing Second

Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C. Cir. 2001).  When

jurisdiction is called into question, a plaintiff cannot rely on mere unsupported allegations or

conclusory statements.  *Id.*  The court should resolve all factual discrepancies in the record in

favor of the plaintiff, *id.* (citing *Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir.

2001)), but it need not treat all of the plaintiff's allegations as true, *id.* (citing *United States v.

Philip Morris Inc.,* 116 F. Supp. 2d 116, 120 n. 4 (D.D.C. 2000)).  Instead, the court "'may

receive and weigh affidavits and any other relevant matter to assist it in determining the

jurisdictional facts.'"  *Id.* (quoting *Philip Morris,* 116 F. Supp. 2d at 120 n.4).

The Plaintiff here has failed to allege specific facts connecting any of the defendants to

this forum.  Instead, it offers mere unsupported speculation.  It suggests that the defendants

might have been "downloading or uploading plaintiffs' copyrighted work with another Doe

defendant based in the District of Columbia" or that they might possibly have "committed the

infringing activities while visiting the jurisdiction."  Plaintiff's Opposition to Motions to

Quash/Motions to Dismiss ("Opp. to MTQ/MTD"), Docket No. 19-1 at 12. Such speculation can hardly suffice to meet Plaintiff's burden of alleging *facts*.[2] Indeed, Plaintiff does not even attempt to couch these statements as factual assertions. Instead it mentions them merely as "examples" of how it *might* have a "good faith argument to assert personal jurisdiction." *Id.* at 13.

Moreover, Plaintiff's suppositions are far-fetched. The software that Plaintiff alleges the defendants used is a widely distributed peer-to-peer technology that is used by millions of people in the United States and around the world.[3] The likelihood that each defendant uploaded or downloaded the single copyrighted work at issue in each case from a person located in the District is exceedingly small. Similarly, the chances are even smaller that a Doe (1) was visiting the District at the exact moment plaintiffs were doing their investigation, and (2) that it was while each was visiting that he downloaded or uploaded this single copyrighted work, and (3) that each of them used what *amici* believe would have to be sophisticated and unusual technical measures to connect through his or her home IP address rather than through the IP address of the hotel or other location where he or she was in the District.

---

[2] Plaintiff made only this claim in its Opposition and therefore waived the additional assertions in support of personal jurisdiction made in its Complaint. Because of this waiver, *amici* will not address those claims separately again here, but those claims have already been addressed by *amici* in their brief of June 2, 2010. Amici's Memorandum In Support of Time Warner Cable's Motion to Quash or Modify Subpoenas, Docket No. 11-1 at 5-10. Specifically *amici* have already demonstrated that as a legal matter, plaintiffs are incorrect in asserting that the fact that the defendants' alleged activities took place on the Internet creates personal jurisdiction in every jurisdiction in the world, including in this District. Similarly, *amici* have noted that that several courts have already rejected plaintiffs' argument that personal jurisdiction over defendants can be based solely on having an ISP that itself may have some contacts within the District. The June 2 amicus brief, as well as the Declaration of Seth Schoen filed therewith, also demonstrates how Plaintiff could have sued each defendant in his or her proper jurisdiction, or at least been able to assert some factual basis for the jurisdiction in response to a motion to dismiss, based on the IP addresses they collected as part of their investigations. *Id.* While *amici* believe that Plaintiff have waived these arguments, and that the arguments fail on their own merits, if the Court wishes additional briefing on these issues, *amici* are prepared to provide it.

[3] [3] Plaintiff's counsel readily admit this fact. In the Declaration of USCG manager Benjamin Perino supporting Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference in this case, Mr. Perino states: "[a]t any given moment and depending on the particular P2P network involved, anywhere from thousands to millions of people, either across the country or around the world, unlawfully use the P2P network [sic]." (Docket No. 2-1 at ¶6).

Given the extremely remote chance that either of these two scenarios occurred here, it is not surprising that Plaintiff has offered these only as hypothetical "examples." No matter how artfully presented, however, imaginary scenarios are not factual allegations, and they do not suffice to establish a *prima facie* basis for the Court to exercise personal jurisdiction over the Does.

### A.   <u>Delay in Dismissal is Unwarranted.</u>

Hoping to distract the Court from its inability to offer factual allegations, much less evidence, of personal jurisdiction, Plaintiff argues that the Court should refuse to consider whether jurisdiction is proper as to those Defendants who have appeared and moved for dismissal, and instead should wait until after it has finished conducting its identity-seeking discovery against all of the 1,062 individuals it has named in this lawsuit. Opp. to MTQ/MTD 7 and 8; Opp. to Am. 3. This argument is unfounded and unfair.

Where a plaintiff has not alleged any basis for personal jurisdiction, the court should dismiss the claim and "need not address other possible deficiencies" in the complaint. *Meyer v. Fed. Bureau of Prisons*, 929 F. Supp. 10, 13 (D.D.C. 1996). Moreover, the D.C. Circuit has held that *sua sponte* dismissal based on lack of personal jurisdiction before a claim has been served on the defendant is appropriate where, as here, the plaintiff has had an opportunity to demonstrate that the Court has personal jurisdiction over the defendants. *Buchanan v. Manley*, 145 F.3d 386, 388 (D.C. Cir. 1998). If the plaintiff fails to demonstrate personal jurisdiction, then the dismissal is appropriate. *Id.* at 388-89. While the dismissal might normally follow briefing on an order to show cause, in this case Plaintiff has had ample opportunity to support jurisdiction via its response to the underlying motions to quash as well as its opposition to *amici's* motion, and has taken advantage of that opportunity by addressing the issues and attaching its substantial additional briefing on these issues. Given that Plaintiff has had "notice of affirmative defenses and an opportunity to be heard," Defendants should now be permitted "to avoid the burden of appearing in a case that appears clearly to have been brought in the wrong court" or that has no basis for personal jurisdiction. *Id.* at 389.

The Court gave Plaintiff a chance to support its jurisdiction claim.  It failed to do so and it is now obvious, as in *Buchanan,* that this case appears "clearly to have been brought in the wrong court."  *Id*.  The Court should dismiss the case against all of the Does and relieve them of the burden of further improper litigation in this district.

      **B.**    <u>**Jurisdictional Discovery Is Equally Unwarranted**</u>

Even if Plaintiff had sought only to have this Court wait until its jurisdictional discovery was completed, further delay would not be justified.  In order to engage in jurisdictional discovery, a plaintiff "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant.  Such a request for jurisdictional discovery cannot be based on mere conjecture or speculation."  *FC Inv. Group LC v. IFX Mkts., Ltd.,* 529 F.3d 1087, 1093-4 (D.C. Cir. 2008) (quoting *Caribbean Broad. Sys., Ltd. V. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) (citations omitted).  In *FC Inv. Group,* the D.C. Circuit upheld a district court's denial of jurisdictional discovery when the defendant company had presented evidence that it had only one client in the District and plaintiff argued that discovery could allow determination of how many transactions the client had conducted and their value, and whether any customers who resided in Virginia or Maryland "had accessed the website while at work in the District."  *Id.*  Plaintiff's arguments here, offering similar speculations that these defendants might possibly have been temporarily in the District while engaging in these behaviors or might possibly have conducted these specific transactions with a person in the District, are equally insufficient to support additional jurisdictional discovery.

The unreported case Plaintiff cites in its brief, *Zwebner v. John Does Anonymous Found., Inc.*, 2001 WL 210173, No. CV-00-1322-HU, (D. Ore. Feb. 28, 2001)), actually supports the defendants.  In that case, a person named French identified himself as the person named as John Doe in the Complaint and filed an answer even before being formally named and served by the plaintiff.  The plaintiff moved to strike the answer as premature and the Court denied the motion, observing that "a defendant in an action may make a voluntary appearance without having been served with the summons and complaint."  *Zwebner,* 2001 WL 210173 at *2 (*citing Jackson v.

*Hayakawa,* 682 F.2d 1344, 1347 (9th Cir.1982)).

Plaintiff tries to distinguish *Zwebner* by noting that the defendant in that case admitted to certain underlying facts, while the Doe Defendants who have moved to dismiss in this case have denied infringing Plaintiff's copyrights.  But the suggestion that a defendant must admit liability before being allowed to seek dismissal for lack of personal jurisdiction is absurd.  The moving Defendants apparently *have* admitted that they are the John Does named via their IP addresses and that is sufficient to allow them to make a voluntary appearance for purposes of moving for dismissal for lack of personal jurisdiction. [4]

Plaintiff also asserts that additional discovery under this Court's provenance is necessary to verify the IP addresses and residential addresses and Media Access Control (MAC) addresses from the various ISPs they have subpoenaed.  Opp. to MTQ/MTD 8.  This is nonsense.  The stated purpose for the subpoenas was to identify the unnamed defendants and that purpose has been fulfilled.  The moving Defendants have already received "verification" of their IP addresses from their ISPs directly.  Presumably, that information is precisely what led to their appearance before this Court.  There is no reason to believe that the ISPs will give different information in response to the subpoena than they have already given to their own customers. Further "verification" via IP address, residential address or MAC address would be redundant at best, and is hardly a sufficient basis to force these defendants to continue to labor under the burden of a lawsuit.

Finally, Plaintiff notes that in the *West Bay One* case Judge Collyer found consideration of jurisdiction over certain Does to be premature where the Plaintiff had not yet named that Doe

---

[4] Plaintiff also mentions several non-mass copyright cases in support of their claims. Opp. to MTQ/MTD 6.  Yet in none of those cases were the plaintiffs seeking to identify thousands of individuals in a far away jurisdiction. *See e.g. Sony Music Entm't, Inc. v. Does 1-40,* 326 F. Supp. 2d 556, 567-568 (S.D.N.Y. 2004); *London-Sire Records, Inc. v. Doe 1,* 542 F. Supp. 2d 153, 180-181 (D. Mass 2008) ); *Arista Records LLC v. Does 1-16,* 2009 WL 414060 *7 (N.D.N.Y. February 18, 2009). Moreover those cases were brought in the jurisdiction where the ISP of the individual defendants was located – which was at least an arguably proper jurisdiction. *Id.*  In contrast, this case and the cases against over thousands of other people brought in this jurisdiction, appear to have been brought here simply because plaintiff's counsel is located here.

as a defendant. Opp to MTQ/MTD 11 n.5. As explained above, Judge Collyer was by no means unaware of the jurisdictional quandary presented by these mass suits, and took steps to address it. *Amici* respectfully submit, however, that Plaintiff's failure to meet its *prima facie* burden mandates an alternative approach – immediate dismissal.

### C. Continuation of Litigation Where No Personal Jurisdiction Exists Is Unfair, Harmful, and Unconstitutional.

Contrary to Plaintiff's intimations, the burden of delay on a defendant is substantial. Waiting to dismiss any Defendants from this case for lack of personal jurisdiction until all of the Does are identified is likely to harm a significant number of Defendants. If any Defendant is seeking a job, a mortgage, a student or other loan, or applying for membership in the bar or any other professional organization, the fact that he or she is a defendant in pending litigation could cause an adverse impact. Moreover, it is likely that at least some of those affected are in a profession, such as law enforcement, where an outstanding accusation of potentially criminal activity such as copyright infringement could cause significant hardship and embarrassment even if they are later exonerated. Defendants deserve to have dispositive issues like personal jurisdiction decided promptly. They should not be forced to have litigation hanging over them until such time as the Plaintiff decides it wishes to move forward or because of the "practical" claims of a plaintiff that has voluntarily chosen the impractical course of suing more than a thousand individuals together in the same case.

Plaintiff asserts that the Does who have not yet been identified by their real names in an amended complaint and formally served with the summons and complaint are not yet parties to this action and therefore have no standing to seek dismissal and no grounds for unhappiness at not being dismissed – because perhaps they never will be named as Defendants. Opp to MTQ/MTD 8-9. This is sophistry. The Does are parties; they have just been named by their IP addresses.

Delay in determining personal jurisdiction would have a broader effect as well, in that it would effectively support the continuation of what *amici* believe is an unfair copyright litigation

business model.  Even though it now appears clear that Plaintiff's counsel is the only entity in this litigation actually located in this District, they have continued filing virtually identical lawsuits here over the past ten months notwithstanding the jurisdictional and other questions that loom in these and other pending cases.  They appear to have continued demanding and receiving payments from those sued to settle the case without need for a formal appearance in this District.[5]  Further delay will allow Plaintiff's counsel to continue to use the fact of pending litigation in the District, which is likely *not* the appropriate jurisdiction for the vast majority of the thousands of people their clients have sued, to pressure settlement payments out of those targeted *before* the lack of personal jurisdiction in this District is revealed.[6] A prompt jurisdictional decision here could help inform defendants in other cases of the jurisdictional problems in these lawsuits, which means they will be less likely to settle the case based on a misunderstanding of whether they can be legally haled into court here.

Put simply, additional delay encourages Plaintiffs' counsel to continue to bring and maintain their improperly-filed lawsuits in this District and to issue demand letters to Defendants

---

[5] While the attorneys here have not revealed the amount of money they have received so far in settlements or what percentage of those who receive a settlement demand letter actually settle, information is available from attorneys in the U.K. that engaged in a similar litigation business model, using either the same or a related "investigation" firm as the Guardeley firm used by plaintiffs' counsel here.  The "sole principal" for the U.K. law firm engaging in the copyright litigation business boasted in April, 2010, that in eleven months it has generated over a million dollars in settlement payments.  Andrew Crossley, *Which?hunt*, Law Society Gazette, April 9, 2010, http://www.lawgazette.co.uk/opinion/letters/which-hunt.  This boast has largely been confirmed by independent analysis of the emails of Mr. Crossley's law firm, ACS Law, which indicate that approximately one-third of those threatened settle relatively quickly.  *Leaked Emails Reveal Profits of Anti-Piracy Cash Scheme,* TorrentFreak.com Sept. 26, 2010, http://torrentfreak.com/leaked-emails-reveal-profits-of-anti-piracy-cash-scheme-100926/; *see also* Nate Anderson, *The 'Legal Blackmail Business: Inside a P2P Settlement Factory*, Ars Technica.com (Oct. 30, 2010), http://arstechnica.com/tech-policy/news/2010/09/amounts-to-blackmail-inside-a-p2p-settlement-letter-factory.ars.

[6] One news source that has been tracking this litigation estimated that 16,000 people have been sued.  Nate Anderson, *US Anti-P2P Law Firms Sue More in 2010 Than RIAA Ever Did*, Ars Technica, Oct. 8, 2010, http://arstechnica.com/tech-policy/news/2010/10/us-anti-p2p-law-firms-sue-more-in-2010-than-riaa-ever-did.ars.  It appears that thousands more have been sued since, *See* Eriq Gardner, *More Than 100000 People Have Been Sued for Sharing Movies in the Past Year*, Hollywood Reporter, (Feb. 1, 2011), http://www.hollywoodreporter.com/blogs/thr-esq/100000-people-sued-sharing-movies-95095 (suggesting more than 20,000 people have been sued in this jurisdiction)

that trade upon the specter of litigation in a far away court as part of the leverage to shake out cash settlements.[7]  This Court should not support or countenance this practice.

Given this ongoing burden on Defendants, and the incentive for Plaintiff to keep that burden hanging over them for as long as possible in order to encourage settlements, Plaintiff's assertions of "practicality," Opp to MTQ/MTD 11, should be viewed skeptically.  This Court should promptly dismiss Defendants from this case where personal jurisdiction is lacking.

## II.   PLAINTIFF HAS NOT SHOWN THAT JOINDER IS PROPER

There is little doubt that Plaintiff's joinder of 1,062 Defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued.  Indeed, more and more courts around the country are disapproving this kind of mass joinder in substantially similar suits.

### A.   Courts Around The Country Have Recognized Joinder Is Improper In Similar Mass Copyright Cases

Plaintiff's principal case for joinder is set forth in the Statement of Good Cause it attached as Exhibit 1 to its global opposition to Motions to Quash and Dismiss.  Yet those very claims of cause have been rejected by courts around the country, in strikingly similar cases.  For example, the Northern District of California has recently found misjoinder in two mass copyright lawsuits, one against 19 Does, the other against 435 Does.  *IO Group v. Does 1-19,* No. 3:10-3851, Docket No. 23, Order at 4-6 (N.D. Cal., Dec. 17, 2010), Reply RJN Ex. B  and *IO Group v. Does 1-435,* No. 3:10-cv-04382, Docket No. 31, Order at 2-3 (N.D. Cal. Jan. 10, 2010), Reply RJN Ex. C.  In both cases, the plaintiff had attempted to join numerous defendants based on the

---

[7] A news article included posting of a copy of the post-litigation letter sent by the plaintiff in the *Achte/Neunte* case as of May, 2010, threatening damages of up to $150,000 per work and offering to settle the case for a sum of $1,500 if payment is made within a month and $2,500 if payment is made within two months. Greg Sandoval, *'Hurt Locker' Sharers: Expect Docs Like This (photos)*, CNET News (May 31, 2010), http://news.cnet.com/2300-1023_3-10003610.html. The demand letter is available at:
 http://news.cnet.com/2300-1023_3-10003610-6.html (page 1),
http://news.cnet.com/2300-1023_3-10003610-7.html (page 2),
http://news.cnet.com/2300-1023_3-10003610-8.html (page 3).
*Amici* are aware of the same letter being sent elsewhere.

theory that because they had used the same peer-to-peer network to reproduce Plaintiff's copyrighted works (at different times), they had acted in concert. Relying on the cases cited in the motion to quash in the present case (and *amici's* brief in support thereof), the court held that these allegations were insufficient to support joinder and *sua sponte* severed all of the defendants except one Doe.  In the latter case, the Court also stayed discovery as to every defendant except Doe 1, noting that plaintiff could seek discovery as to the severed Does if and when it re-filed separate actions.  Notably, the first Order came in response to a defendant's motion to quash.

The United States District Court for the Northern District of West Virginia has taken a similar approach.  *See West Coast Productions, Inc., v. Does* 1-535, No. 3:10-cv-00094-JPB -JES (N.D. W. Va. Dec. 16, 2010), Order, Docket No. 45, Reply RJN Ex. D (quoting *BMG Music v. Does 1-203*, 2004 WL 953888, at *1).  In that case, an ISP, Time Warner Cable, moved to quash a subpoena seeking identifying information for numerous Doe defendants. (EFF participated as amicus.)  As here, the complaint alleged that all of the Does had used peer-to-peer networks to infringe a single copyrighted work.  The court held that all defendants but Doe 1 were improperly joined, severed those defendants from the action, and quashed subpoenas seeking identifying information for those defendants.  The Order stressed that any new actions against the severed Does may proceed only against Does with IP addresses of computers located within that court's jurisdiction.  *Id.* at 4 n.2.  Virtually identical orders were issued in six additional cases. *See Combat Zone, Inc., v. Does 1-1037*, No. 3:10-cv-00095-JPB -JES (N.D. W. Va. Dec. 16, 2010), Order, Docket No. 71; *see also Combat Zone, Inc., v. Does* 1-245, No. 3:10-cv-00096-JPB -JES (N.D. W. Va. Dec. 16, 2010), Order, Docket No. 28; *Patrick Collins, Inc., v. Does 1-118*, No. 3:10-cv-00092-JPB -JES (N.D. W. Va. Dec. 16, 2010), Order, Docket No. 42; *Patrick Collins, Inc., v. Does 1-281*, No. 3:10-cv-00091-JPB -JES (N.D. W. Va. Dec. 16, 2010), Order, Docket No. 42; *Third World Media, LLC, v. Does 1-1243*, No. 3:10-cv-00090-JPB -JES (N.D. W. Va. Dec. 16, 2010), Order, Docket No. 66; *West Coast Productions, Inc., v. Does 1-2010*, No. 3:10-cv-00093-JPB -JES (N.D. W. Va. Dec. 16, 2010), Order, Docket No. 44.

In all of these cases, the alleged wrongful acts were committed by unrelated defendants,

13

at different times and locations, sometimes using different services, and perhaps subject to different defenses.[8]  As these courts have recognized, this kind of attenuated relationship is not sufficient for joinder.  *Id.*; *see also, e.g., BMG Music v. Does 1-203*, 2004 WL 953888, at *1; *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) (ordering severance of lawsuit against thirty-eight defendants where each defendant allegedly used the same ISP as well as some of the same peer-to-peer ("P2P") networks to infringe copyright; "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder.")

Plaintiff suggests that this precedent should not apply because the Does in this case are alleged to have used same peer-to-peer protocol.  *See* Plaintiff's Statement of Good Cause ("SJC") Docket No. 19-2 at 5, 9.  That is a distinction without a difference. As explained in greater detail in the declaration of an EFF Senior Staff Technologist, BitTorrent software is not materially different from the file sharing systems that were at issue in previous litigation about peer-to-peer file sharing such that the earlier decisions about those technologies should not apply here.  Declaration of Seth Schoen In Support of Reply ("Schoen Reply Dec.") ¶¶ 5-9.

As Mr. Schoen also explains, it is highly unlikely (*contra* Plaintiff's suggestion, Opp to MTQ 8) that the thousands of individuals sued jointly here uploaded and downloaded the copyrighted work at issue in this case directly from each other. Schoen Reply Dec ¶¶ 10-18.

Empirical research shows that most BitTorrent users do not remain connected for very long after their downloads are complete.  For example, one large study observed that only 3.1% of BitTorrent users stayed connected (to upload to others) more than ten hours after their

---

[8] For instance, some individuals may have good defenses based on actions by a neighbor piggybacking on their wireless network, or on actions by a roommate, houseguest, or visiting child or grandchild.  Others may have defenses based on mistakes in the records of their ISPs or flaws in the investigative techniques used by the Plaintiff.  Still others may demonstrate that they do not even have peer-to-peer software.  All of these defenses have been raised in various single (*i.e.,* non-mass) copyright cases in the past. *See e.g.* Associated Press, *Music Industry Sues 83-Year-Old Dead Woman Boston Globe*, Feb. 4, 2005, at 54; Xeni Jardin, "RIAA sues grandmother for downloading Snoop Dogg (Sept. 25, 2003), *http://boingboing.net/2003/09/25/riaa-sues-grandmothe.html*.

downloads completed; only 0.34% stayed connected over 100 hours.  J. A. Pouwelse, P. Garbacki, D. H. J. Epema, and H. J. Sips, *The BitTorrent P2P File-Sharing System: Measurement and Analysis*, 2005 Procs. of the 4th Int'l Workshop on Peer-to-Peer Systems 4, *available at* http://www.springerlink.com/content/l251rj12233u05l. Another study found that over 90% of users who successfully downloaded a file remained connected for less than a single day, while many users who attempted to download the file gave up entirely and disconnected within the first few hours. M. Izal, G. Urvoy-Keller, E. W. Biersack, P. A. Felber, A. Al Hamra, and L. Garcés-Erice, *Dissecting BitTorrent: Five Months in a Torrent's Lifetime*, 2004 Procs. of the Fifth Int'l Workshop on Passive & Active Network Mgmt. 7, *available at* http://www.springerlink.com/content/fg8hqw4136t0vtx9/.

Thus, it is not at all probable that all or even a significant number of the Defendants who downloaded the work in question here stayed on the network and became a source for another Defendant to download from. Certainly such direct interactivity should not be assumed here where Plaintiff has provided no evidence in support of it.

Nor does the fact that Defendants are alleged to have infringed the same work change matters.  Indeed, the principal case Plaintiff cites in support of its position, *MyMail Ltd. v. Am. Online, Inc.,* 223 F.R.D. 455 (E.D. Tex. 2004), is easily distinguishable.  First, the case involved patent litigation, where the nature and scope of the patent is a crucial and often disputed operative fact that may eliminate commonly held defenses, such as invalidity.  Thus, resolving the question for several defendants at once may speed litigation considerably.  Here, by contrast, no one is disputing the nature of the copyright.  For purposes of damages, there may be a dispute as to registration – but that is a common fact that may have a very different impact on different defendants, depending on when they are alleged to have infringed the work.

Moreover, the case represents neither binding authority nor universally held views—even where patent litigation is concerned.  In *ThermaPure, Inc. v. Temp Air, Inc.,* No. 10-CV-4724, 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2002), for example, the District Court for the Northern District of Illinois firmly rejected infringement of the same patent as a basis for joinder.

*Id.* ("Courts in this district . . . have consistently held that Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed the same patent or trademark) (collecting cases).

**B.     The Court Should Address the Problem of Improper Joinder Now**

As the file-sharing cases cited above also suggest, and with due respect to Judge Collyer, who may not have been aware of the larger business model at play here, consideration of joinder is not premature.  The Court has broad discretion to refuse joinder under Rule 21 in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness. *See M.K. v.* Tenet, 216 F.R.D. 133, 138 (D.D.C. 2002); *Brereton v. Commc'ns Satellite Corp.*, 116 F.R.D. 162, 163 (D.D.C. 1987) (stating that Rule 21 must be read in conjunction with Rule 42(b), which allows the court to sever claims in order to avoid prejudice to any party); *see also, e.g.*, *Intercon Research Assocs., Ltd. v. Dresser Indus*, Inc., 696 F.2d 53, 57-58 (7th Cir. 1982) (citing *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)) ("[A] trial court must . . . determine whether the permissive joinder of a party will comport with the principles of fundamental fairness."); *see also Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516, 521 (5th Cir. 2010) (stating that courts district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding the principles of fundamental fairness); *Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir. 2000) (same); *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580-81 (E.D.N.Y. 1999) (same)). This Court should exercise that discretion in this case. Joining hundreds of unrelated Defendants in one lawsuit here may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel and seeking local counsel in multiple jurisdictions, but that does not mean these well-established joinder principles should be ignored.

**III.    PLAINTIFF MISSTATES THE APPROPRIATE FIRST AMENDMENT STANDARD FOR DISCOVERY OF IDENTIFYING INFORMATION**

As explained in *amici's* principal brief, Plaintiff's motion for leave to seek early

discovery failed to apprise the Court of the appropriate discovery standard in cases where, as here, Defendants allegedly were engaging in anonymous communication and Plaintiff's claims arise from those alleged activities.  Plaintiff's subsequent briefing continues to fail to do so.  *See* Opp. to Am. 3-4.

First Amendment protection extends to the anonymous publication of expressive works on the Internet, even if the publication is alleged to infringe copyrights.  *See Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("The use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection.").  *See also, e.g.*, *In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C.), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003) (anonymous online activity entitled to First Amendment protection); *Interscope Records v. Does*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008) (same); *UMG Recordings, Inc. v. Does 1-4*, No. 06-0652 SBA (EMC), 2006 WL 1343597, at *2 (N.D. Cal. Mar. 6, 2006) (same).  In *Sony*, the court concluded that, although sharing creative content is not "political expression" entitled to the "broadest protection," a file sharer is still entitled to "some level of First Amendment protection." 326 F. Supp. at 564. (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995)).

Only a compelling government interest can overcome such First Amendment rights, and the mere filing of a lawsuit does not make the identification of a defendant a compelling interest *unless* there is good reason to believe that the suit has a realistic chance of being successful.  The identification of an anonymous speaker is a form of relief to the plaintiff (because it can enable extra-judicial self-help such as that seen in the settlement demands in these mass lawsuits), and it harms the anonymous defendant, because once the right of anonymous expression is taken away, it cannot be recovered.  Relief – an order that benefits the plaintiff and hurts the defendant – is not customarily given without some proof of wrongdoing.   Finally, if the courts allow thousands of anonymous speakers to be identified any time someone is willing to pay the filing fee for a single lawsuit, we risk creating a significant chilling effect for anonymous speakers who are

worried about the harmful consequences of having their identities revealed.

Thus, while a party may properly seek information necessary to pursue meritorious litigation, litigants may not use the discovery power to uncover the identities of people without an appropriate basis. Accordingly, courts evaluating attempts to unmask anonymous speakers in cases similar to the one at hand have adopted standards that balance a person's right to speak anonymously with a litigant's legitimate need to pursue a claim.

Plaintiff insists that the First Amendment interests identified here do not apply in copyright infringement cases. Not so. While it is true that the speech interest may be comparatively "small" – as described by one of the decisions Plaintiff itself cites – they are not nonexistent and, therefore, may not be ignored. *See* Opp. to MTQ 16 (citing *Arista Records LLC v. Does 1-14,* 558 F.Supp.2d 1176, 1178 (D. Kan. 2008)); *Sony*, 326 F. Supp. at 564; *In re Verizon*, 257 F. Supp. 2d at 260.

The leading case establishing the standard for considering such interests is *Dendrite v Doe. Dendrite Int'l v. Doe*, 775 A.2d 756, 760-61 (N.J. Super. Ct. App. Div. 2001), which has been adopted as well by courts in this district, *see Sinclair v. TubeSockTedD,* 596 F. Supp. 2d 128 (D.D.C. 2009), and many other courts across the country. The elements of the test – and the reasons why Plaintiff cannot meet them -- are described in *amici*'s principal brief. (Dkt. #18 at 15-17). Given that Plaintiff has made no attempt to explain why its request for discovery passes constitutional muster under *Dendrite* (or any one of the related federal and state standards identified in *amici's* principal brief), these subpoenas should be quashed for this reason as well.

As Plaintiff notes, Judge Collyer did not require Plaintiffs in the *West Bay One* and *Achte/Neunte* to meet the proper First Amendment standard. For the reasons state above, *amici* respectfully submit that Judge Collyer should have done so, and urge this Court to do so here.

## CONCLUSION

For these reasons, *amici* again respectfully urge this Court to grant Time Warner Cable's motion to quash the subpoena issued to it, and to quash, *sua sponte*, the similar subpoenas issued

to other ISPs in this case.  Additionally, we suggest that the Court instruct Plaintiff that any future subpoenas issued in this case to ISPs seeking the identity of anonymous Internet users must be accompanied by a cover notice ordering the ISP (1) to forward, within seven days of service of the subpoena, a notice along the lines of that attached as Ex. A to the Request for Judicial Notice filed herewith, to any person whose information has been sought that such information may be disclosed; and (2) to provide sufficient opportunity for the subscriber to exercise those rights, such as by moving to quash. Plaintiff should be required to compensate the ISP for additional costs, if any, associated with providing notice.

*Amici* further respectfully suggest that the Court cure Plaintiff's improper joinder of the thousands of defendants named in this case by severing all but Defendant Doe 1 and  dropping Does 2 through 1,062 from this action.  Plaintiff may, of course, file new lawsuits in this District against any defendant, including Does 2 through1,062, as to whom Plaintiff can meet its burden of establishing jurisdiction.

Dated: February 4, 2011                    Respectfully submitted,

                                           *s/Corynne McSherry*_____
                                           Corynne McSherry (*pro hac vice*)
                                           *corynne@eff.org*
                                           Cindy Cohn
                                           *cindy@eff.org*
                                           ELECTRONIC FRONTIER FOUNDATION
                                           454 Shotwell Street
                                           San Francisco, CA 94110
                                           T: (415) 436-9333
                                           www.eff.org

                                           Attorney for *Amicus*
                                           ELECTRONIC FRONTIER FOUNDATION

                                           *s/Marcia Hofmann*_____
                                           Marcia Hofmann (D.C. Bar No. 484136)
                                           *marcia@eff.org*
                                           ELECTRONIC FRONTIER FOUNDATION
                                           454 Shotwell Street
                                           San Francisco, CA 94110
                                           T: (415) 436-9333
                                           www.eff.org

                                           Attorney for *Amicus*
                                           ELECTRONIC FRONTIER FOUNDATION

                                           Paul Alan Levy
                                           *pleavy@citizen.org*
                                           PUBLIC CITIZEN LITIGATION GROUP
                                           1600 - 20th Street, N.W.
                                           Washington, D.C. 20009
                                           T: (202) 588-1000
                                           http://www.citizen.org/litigation

                                           Attorney for *Amicus*:
                                           PUBLIC CITIZEN

Arthur B. Spitzer (D.C. Bar. No. 235960)
*artspitzer@aol.com*
AMERICAN CIVIL LIBERTIES UNION OF
THE NATION'S CAPITAL
1400 20th Street, N.W., Suite 119
Washington, D.C. 20036
T. 202-457-0800
www.aclu-nca.org

Attorney for *Amicus*:
AMERICAN CIVIL LIBERTIES UNION OF
THE NATION'S CAPITAL

Aden J. Fine (D.C. Bar No. 485703)
*afine@aclu.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2500
www.aclu.org

Attorney for *Amicus*:
AMERICAN CIVIL LIBERTIES UNION

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2011, a true and correct copy of the following documents:

- o  *Amici curiae* Electronic Frontier Foundation, Public Citizen, American Civil Liberties Union Foundation, and American Civil Liberties Union of the Nation's Capital's Motion for Leave to Respond

- o  Reply Memorandum of Amici Curie

- o  Declaration Of Seth Schoen In Support Of Reply

- o  *Amici curiae* Electronic Frontier Foundation, Public Citizen, American Civil Liberties Union Foundation, and American Civil Liberties Union of the Nation's Capital's Request for Judicial Notice in Support of Reply

- o  Proposed Order

was sent via first-class mail as follows:

> Carey Lening, Esq.
> 1325 G. St. NW Ste 5000
> Washington, DC 2005
> *Attorney for Omnibus Motion Defendants*
>
> Patrick King, Esq.
> 47 Seaton Pl. NW
> Washington, DC 20001
> *Attorney for Doe Defendant*
>
> Brian D. Geno, Esq
> Geno Law Firm, P.C.
> Red Maple Court Office Condominiums
> 10617 Jones Street, Suite 201-B
> Fairfax, VA 22030
> *Attorney for Doe Defendant*

I also hereby certify that on February 4, 2011, a true and correct copy of the

aforementioned documents was sent via electronic means to the following:

> sadiusrex@yahoo.com

I have no reason to believe these documents were not received.

> *s/Corynne McSherry*_____