**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CALL OF THE WILD MOVIE, LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>DOES 1-1,062,<br><br>     Defendants. | Civil Action No. 10-00455 (BAH)<br>Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

  Plaintiff has filed this copyright infringement action alleging that the defendants, who are denominated as Does 1-1,062, have illegally copied and distributed Plaintiff's motion picture, *Call of the Wild*, using a peer-to-peer file sharing protocol called BitTorrent. BitTorrent is a software program that enables users to download pieces of data directly from other users' computers.[1] First Amended Compl., ¶ 3, ECF No. 6. The software then organizes the data into a complete and cohesive media file that can be viewed on a requester's computer. *Id.* These downloads are accomplished through a decentralized network of individual computers and generally without the aid of an intermediary server. According to the plaintiff, due to the manner in which BitTorrent works, "every infringer is simultaneously stealing copyrighted material from many ISPs in numerous jurisdictions around the country." *Id.* at ¶ 4.

  Plaintiff has identified the Internet Protocol ("IP") addresses of the computers offering for upload parts of the plaintiff's motion picture, together with the date and time at which the alleged infringement activity was observed. First Amended Compl., Ex. A. On April 15, 2010,

---

[1] Plaintiff argues that because data is typically transferred both to and from BitTorrent users, "every downloader [is] also an uploader of the illegally transferred file(s)." First Amended Compl., ¶ 3.

the Court issued an order permitting the Plaintiff to subpoena eight Internet Service Providers ("Providers") that service the identified IP addresses to discover the names, addresses, telephone numbers, email addresses and Media Access Control Numbers of the putative defendants.[2] Order Granting the Pl.'s Motion for Leave to Take Discovery Prior to Rule 26(f) Conference, Apr. 15, 2010, ECF No. 4. Since that Order was issued, anonymous persons, who are Providers' customers and putative defendants, have attempted to file motions in this case to quash subpoenas issued to the Providers.

Both the Federal Rules of Civil Procedure and Local Civil Rules require that persons filing papers in Federal court identify themselves by name and provide contact information. Rule 11(a) of the Federal Rules of Civil Procedure states, in pertinent part, that "[e]very . . . written motion, and other paper must be signed . . . by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number . . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention." FED. R. CIV. P. 11(a). Likewise, Local Civil Rule 5.1(e)(1) provides that "[t]he first filing by or on behalf of a party shall have in the caption the name and full residence address of the party." LCvR 5.1(e)(1).

Parties are required to identify themselves to "protect[] the public's legitimate interest in knowing all of the facts involved [in a case], including the identities of the parties." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) (citation omitted). As one court explained:

> [I]t is the responsibility of judges to avoid secrecy . . . and the concealment of the judicial process from public view. Courts are public institutions which exist for the public to serve the public interest.

---

[2] One of the Providers, Time Warner Cable Inc., has moved to quash the subpoena directed at it, which motion is pending. *See* ECF No. 7.

2

*See Doe v. Fed. Bureau of Investigation*, 218 F.R.D. 256, 258 (D. Colo. 2003); *see also Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1068-69 (9th Cir. 2000) (parties may "use pseudonyms in the unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment.")(internal quotations omitted).

In addition to the public interest in transparency concerning the lawsuits pending before the Federal courts, identification of the parties participating in these proceedings is necessary to protect the integrity of the process itself by enabling the presiding judge to determine whether recusal may be necessary. *Liteky v. United States,* 510 U.S. 540, 548 (1994); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988). A judicial officer is required to recuse (1) in any proceeding in which the officer's "impartiality might reasonably be questioned;" or (2) if any of the statutorily enumerated conflicts of interest exist. *See* 28 U.S.C. § 455(a) (2010) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); *id*. at § 455(b) (circumstances requiring recusal); 28 U.S.C. § 144 (2010); CODE OF JUDICIAL CONDUCT FOR UNITED STATES JUDGES Canon C3(c)(1), reprinted in 69 F.R.D. 273, 277. Review of the identities of the parties is essential for Courts to be able to make a determination whether the statutory and related ethical requirements for recusal are applicable.[3]

At the same time, the Supreme Court has made clear that First Amendment protection extends to some anonymous speech. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995) ("The freedom to publish anonymously extends beyond the literary realm."). This First

---

[3] To protect the integrity of the process, the Federal Rules of Civil Procedure and the local rules of this Court require that corporate parties provide even more information than individuals, including the names of any parent corporation and any publicly held corporation owning 10% or more of its stock. FED. R. CIV. P. 7.1; LCvR 7.1.

Amendment protection encompasses anonymous speech on the Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997) ("There is 'no basis for qualifying the level of First Amendment scrutiny that should be applied to [the internet]"); *accord*, *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 131 (D.D.C. 2009) ("Such rights to speak anonymously apply . . . to speech on the Internet."). Anonymity may be "motivated by fear of economic or official retaliation, by concern over social ostracism, or merely by a desire to preserve as much of one's privacy as possible." *McIntyre,* 514 U.S. at 341-42. Nevertheless, First Amendment rights are not absolute and, indeed, certain classes of speech, such as defamatory and libelous utterances, are entitled to no Constitutional protection at all. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942); *Beauharnais v. Illinois*, 343 U.S. 250, 266 (1952).

In this case, the First Amendment speech rights of the Providers' customers are implicated in two inter-related ways: first, in their effort to speak to the Court by submitting anonymous papers to quash plaintiff's subpoenas to the Providers; and, second, their interest in limiting plaintiff's (and public) knowledge of the online content they allegedly chose to upload or download, albeit allegedly illegally. *London-Sire Records Inc. v. Doe 1*, 542 F. Supp. 2d 153, 163 (D. Mass. 2008) ("there are some creative aspects of downloading music or making it available to others to copy: the value judgment of what is worthy of being copied; the association of one recording with another by placing them together in the same library; the self-expressive act of identification with a particular recording; the affirmation of joining others listening to the same recording or expressing the same idea . . . . [W]hile the aspect of a file-sharer's act that is infringing is not entitled to First Amendment protection, other aspects of it are."). In evaluating the extent of these First Amendment interests to participate anonymously in this case, the Court must be mindful of the countervailing strong public interest in the transparency and integrity of

judicial proceedings effectuated through the requirement of full identification of parties and other participants in the case.

Courts in this jurisdiction have balanced the competing interests posed by anonymous participation in a judicial case against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party through consideration of the following factors: (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.[4] *See Achte/ Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-4,577*, No. 10-453, Order of September 16, 2010, ECF No. 91 (Collyer, J.); *John Doe #1 v. Von Eschenbach*, No. 06-2131, 2007 U.S. Dist. LEXIS 46310, at *5 (D.D.C. June 27, 2007) (citing *Yacovelli v Moeser*, No. 02-596, 2004 U.S. Dist LEXIS 9152, at *19-20 (M.D. N.C. May 20, 2004); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)).

The first factor is the most significant in this case. Courts have permitted parties to remain anonymous "where the issues are 'matters of a sensitive and highly personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families.'" *Von Eschenbach*, 2007 U.S. Dist. LEXIS 46310, at *4 (quoting *Southern*

---

[4] The issue decided here whether the Providers' customers are exempt from the applicable Federal and local civil procedure rules on identification of parties participating in litigation before the Court and may file motions anonymously is separate from the question whether these customers have a First Amendment right to anonymity that warrants quashing of the subpoenas to the Providers. Other factors are considered to determine whether the First Amendment shields an anonymous putative defendant's identity from disclosure in the context of deciding a motion to quash a subpoena under Fed. R. Civ. P. 45. *See Sony Music Ent. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004); *Virgin Records America, Inc. v. Doe*, 2009 U.S. Dist. LEXIS 21701 (E.D. N.C. Mar. 16, 2009).

*Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979)); s*ee also James*, 6 F.3d at 238 (anonymity request improperly denied in malpractice suit against a doctor who, when providing artificial insemination, used his own sperm instead of spouse of plaintiff); *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988) (allowing plaintiff to sue insurance company anonymously to protect against identification as a homosexual); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974) (permitting plaintiff in abortion suit to use pseudonym due to the personal nature of pregnancy).  This matter simply does not fall into this narrow class of cases.

On the contrary, the Providers' customers, who are seeking to file motions to quash plaintiff's subpoena, are doing so anonymously to avoid being effectively targeted for their allegedly infringing downloads of plaintiff's copyrighted movie.  The use of anonymity as a shield from copyright liability is not a motivation that warrants the protection from the Court. To the extent the putative defendants have First Amendment interests at stake, those interests are small.[5]  The First Amendment does not protect copyright infringement.  *Harper & Row Publishers, Inc., v. Nat'l Enters.*, 471 U.S. 539, 560 (1985); *see also Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) ("First Amendment privacy interests are exceedingly small where the 'speech' is the alleged infringement of copyrights.").  Any First Amendment right of the Providers' customers to remain anonymous, therefore, "must give way to the plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims." *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 567

---

[5] Amici ACLU, Electronic Frontier Foundation, and Public Citizen were granted to leave to file a brief on January 3, 2011. The Amici urge the Court to adopt "the appropriate procedure for seeking disclosure" of the identities of the Providers' customers, who allegedly engaged in infringing downloads of plaintiff's movie, and to require the Providers to provide notice to the customers "outlining the target's legal options."  Memorandum of Amici Curaie EFF, Public Citizen, and ACLU Foundation in Support of Third Party Time Warner Cable's Motion to Quash or Modify Subpoena at 14-19, *Call of the Wild v. Does 1-1,062*, No. 10-455 (filed Jan. 3, 2011), ECF No. 18.  This is an issue pertinent to the pending motion to quash by one of the Providers, and not to the instant issue whether the putative defendants are required to comply with applicable rules on identification of parties.

(S.D.N.Y.2004).

Moreover, as more than one Judge on this Court has recently found, "[i]nternet subscribers do not have an expectation of privacy in their [identifying information] as they have already conveyed such information to their Internet Service Providers." *Achte*, No. 10-453, 2010 WL 3522256, at *3 (D.D.C. Sept. 10, 2010) (citations omitted) (Collyer, J.); *see also Donkeyball Movie LLC v. Does 1-171*, No. 10-1520, Order of January 14, 2011, ECF No. 18 (Sullivan, J.); *Maverick Entm't Grp., Inc. v. Does 1 - 4,350*, No. 10-569, Order of December 1, 2010, ECF No. 17 (Leon, J.).

Second, rather than risking retaliatory action, timely identification of the putative defendants would enable the copyright owner, the putative defendants and this Court to resolve the merits of the plaintiff's claim of copyright infringement. Avoiding potential liability for copyright infringement does not qualify as a risk of retaliation that would weigh in favor of permitting a party to proceed anonymously. *See Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005) (vague, unsubstantiated fears of retaliatory actions do not permit a plaintiff to proceed under a pseudonym); *Doe v. Stegall,* 653 F.2d 180, 186 (5th Cir. 1981) (permitting students challenging the constitutionality of prayer and Bible readings at their school to remain anonymous to protect them from "extensive harassment and even violent reprisals . . . ."); *Gomez v. Buckeye Sugars*, 60 F.R.D. 106, 107 (N.D. Ohio 1973) (permitting FLSA plaintiffs to use pseudonyms to protect them from employer reprisals).

Third, the ages of the Providers' customers who have sought or will seek anonymous participation in this case are unknown, and therefore this factor is currently irrelevant.

Fourth, this case does not involve a challenge to governmental action that may, in some circumstances, prompt public censure and persuade a court to permit a party to proceed under a pseudonym. *Yacovelli*, 2004 U.S. Dist LEXIS 9152, at *24-25.

Finally, the risk of unfairness to the plaintiff from allowing the Providers' customers to proceed anonymously is real. "As a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity." *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 775 n.3 (8th Cir. 2005).[6] By filing this lawsuit against unknown putative defendants and using the subpoena power to learn the identity of Internet service customers who infringe, copyright owners are able to take steps to protect their interests, seek compensation for their misappropriated property, and stop infringement. The Court recognizes that disallowing anonymous participation by the putative defendants to contest the issuance of subpoenas to the Providers presents a "catch-22" situation: those customers wishing to be heard would have to reveal their identities before the merits of the motion to quash are reached, defeating the very purpose of their motion to maintain their anonymity. *See West Bay One, Inc. v. Does 1-1,653*, 270 F.R.D. 13, 15 (D.D.C. 2010)("by filing the motions to quash on the public record of the Court, Mr. Wright provided the most critical information sought by the subpoenas-his name and address. His motion to quash could be deemed moot, at least with regard to this information."). As noted, however, identification of the parties also serves other judicial and public interests in the integrity and fairness of the

---

[6] The Court of Appeals for the Eighth Circuit reversed the lower court's allowance of a subpoena issued under the section 512(h) of the Digital Millennium Copyright Act (DMCA) to a cable operator that provided conduit service used by its subscribers to download copyrighted material over peer-to-peer networks, finding that such subpoena authority only applied when the ISP stored the infringing material on its network (rather than on the customer's computer). *Accord Recording Indus. Ass'n of Am. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1232 (D.C. Cir. 2003). The Eighth Circuit acknowledged that without this DMCA subpoena tool to discover the identity of the alleged infringer, "organizations . . . can also employ alternative avenues to seek this information, such as 'John Doe' lawsuits. In such lawsuits, many of which are now pending in district courts across the country, organizations . . . can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d at 775 n.3.

8

proceedings. Moreover, procedural mechanisms are available under the Federal Rules of Civil Procedure to protect public disclosure of defendants' identities.[7] Accordingly, at this stage of the proceedings, the Providers' customers who wish to contest the subpoenas to the Providers must reveal their identities at least to the Court, pending a decision on the merits of their motions, which may ultimately require disclosure of their identities to plaintiff.

For these reasons, the desire of Providers' customers who are putative defendants to submit motions and proceed anonymously in this case does not override the public's interest in identifying the parties, in accordance with the Federal Rules of Civil Procedure and Local Civil Rules, to ensure that judicial proceedings are open and fair.

Accordingly, it is hereby

**ORDERED** that any motion in this matter sent to the Court that does not provide the name, address and telephone number of the person submitting the motion, as required by Rule 11(a) of the Federal Rules of Civil Procedure and Local Civil Rule 5.1(e), shall not be docketed by the Clerk of the Court; and it is further

**ORDERED** that any person who has attempted to file a motion in this matter without providing his/her name, address and telephone number, as required by Rule 11(a) of the Federal Rules of Civil Procedure and Local Civil Rule 5.1(e), may promptly correct and re-file the motion in order for the motion to be considered by the Court; and it is further

---

[7] *See* FED. R. CIV. P. 26(c)(1) (The Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."); LCvR 5.1(j).

**ORDERED** that the Clerk of the Court is directed to return to the sender, if feasible, with a copy of this Order, any motion in this matter sent to the Court that does not provide the name, address and telephone number of the person submitting the motion.

**SO ORDERED.**

February 24, 2011

*Beryl A. Howell*
BERYL A. HOWELL
United States District Judge